In the Matter of SARAH K. SCHWARTZ, an insane person. Petition of Stewart Lynch, Trustee.

*New Castle, January 19, 1942.*

*Collins J. Seitz,* for Stewart Lynch, successor trustee.

*James T. Mullin,* for William Schwartz, former trustee.

*James R. Morford* and *William Marvel,* of the firm of Marvel & Morford, for United States Fidelity & Guaranty Company, intervenor.

*David F. Anderson,* of the firm of Southerland, Berl, Potter & Leahy, for Indemnity Ins. Co. of North America, intervenor.

THE VICE-CHANCELLORS  By an order of this court dated May 9, 1928, William Schwartz was appointed trustee for his mother, Sarah K. Schwartz, an insane person. In 1929, he filed an account as such trustee for the period from his appointment to July 31, 1929. In a writing attached to the account, persons describing themselves as all of the heirs-at-law of the insane person, and as those who would be entitled to share in her estate in the event of her death, waived notice of the filing of the account and assented to its prompt presentation to the Chancellor for his approval. Thereafter the following order was entered:

"And now, to-wit, this 4th day of December, A. D. 1929, the foregoing account having been examined, and neither the Trustee nor any party in interest having requested that the investments of the trust principal be approved or disapproved;

"It is ordered by the Chancellor that the remainder of the account be and it is hereby approved, without passing upon the manner in which the principal of the trust has been or is now invested."

In December 1937, William Schwartz petitioned this court for leave to resign as trustee, and on the same day

an order was entered accepting the resignation, appointing Stewart Lynch as successor trustee, directing the retiring trustee to account, and providing that "upon the approval by this Court of such account he shall stand discharged as such trustee." The retiring trustee filed an account, but not until June 1940, after contempt proceedings had been instituted against him because of his failure to account. The final account has not yet been approved.

The successor trustee, by petition filed January 8, 1941, seeks to have vacated the order of December 4, 1929 approving the first account, and asks leave to file exceptions to that account. This is resisted strenuously by the former trustee and the sureties on his bond who were granted leave to intervene in the proceeding. The intervenors, in support of their motion to dismiss, urge that the matters stated in the petition of the successor trustee have been fully adjudicated and determined in this cause; that the alleged claims of the parties in interest have been barred by laches and act of limitations; that the former trustee and the sureties have been discharged and exonerated from liability for any act of the trustee by virtue of the order of December 4, 1929; that exceptions should not be entertained so long after the adjudication of a matter by the order of approval because of the lapse of time, loss of evidential data, forgetfulness of witnesses, and other practical considerations that render impossible the effective establishment of defenses otherwise available; that the petition fails to state facts entitling the petitioner to relief, is inadequate and lacking in equity. The former trustee objects on substantially the same grounds.

The former trustee was appointed pursuant to the provisions of *Section* 2615 of the *Revised Code of Delaware* 1915, which authorizes the Court of Chancery to appoint trustees for insane persons to take charge of them and manage their estates. The following sections of that Code make reference to accounts of, or accounting by trustees for insane persons:

"2615. Sec. 23. TRUSTEES; BOND OR RECOGNIZANCE; ACCOUNTS; AL-LOWANCES:—The trustees shall enter into recognizance or into a bond * * * for the faithful discharge of his duty; and shall, at least once in every two years, account before the Chancellor. In such account he shall be allowed necessary expenses and just compensation for trouble. * * *"

"2619. Sec. 27. TRUSTEES; ACCOUNTING AT END OF TRUST:—In case of the recovery., or death, of the insane person, the trustee shall de-liver and pay to him, or to his heirs, or proper representatives, all the balance of his estate, real and· personal; and the Chancellor shall cause to be transferred to him, or them, all stock, or investments, as afore-said, or the proceeds thereof when sold, deducting just allowances to the trustee as aforesaid."

Substantially the same provisions are contained in an act of the General Assembly passed February 2, 1793, 2 *Laws of Delaware pp.* 1055, 1056, and in subsequent acts. None of the statutes, from the first to the present, has made express provision as to the finality of accounts, or orders approving accounts, of trustees for insane persons. In the absence of a governing statute to the contrary, it is gener-ally held that settlements of periodic or intermediate ac-counts of those appointed to administer the affairs of an insane person are not conclusive upon the lunatic, or upon persons charged with the duty of protecting his estate; that such accounts may be opened and reconsidered notwith-standing approval by a court, but that, when properly made and approved, they are considered to be *prima facie* correct, so that the party attacking them has the burden of proving their incorrectness. *State v. Jones,* 89 *Mo.* 470, 1 *S. W.* 355; *Indiana Trust Co. v. Griffith,* 176 *Ind.* 643, 95 *N. E.* 573, 44 *L. R. A. (N. S.)* 896, *Ann. Cas.* 1914 *A,*:1023; *In re Thomas' Estate,* 26 *Colo.* 110, 56 *P.* 907; *Luke v. Kettenbach,* 32 *Idaho* 191, 181 *P.* 705; *Annotation,* 99 *A. L. R.* 996; 25 *Am. Jur.* 100, 101; 32 *C. J.* 705. The reasons for this rule as stated by the Supreme Court of California in the case of *In re Di Carlo's Estate and Guardianship,* 3 *Cal.* 2d 225, 44 *P.* 2d 562, 566, 99 *A. L. R.* 990, with respect to accounts of

a guardian of a minor, are equally applicable to accounts of a trustee for an insane person:

"* * * the rule laid down is reasonable, and necessary for the protection of the ward. The rights of the guardian are sufficiently safeguarded by considering the approved account as *prima facie* correct, thus placing the burden of proof upon the party attacking it. To make it conclusive in favor of the guardian and against the ward would mean that the rights of a person under disability would be completely cut off, with no representation of him except by a party whose interest may be adverse. The representation given the ward by the court in these situations is largely illusory. The court should satisfy itself of the correctness of the account before approving it; but the account is prepared by the guardian, and the court has neither opportunity nor facilities for making a critical and extended examination of its frequently complex and detailed items. * * *"

The case of *Vinson, et al., v. Vinson, Trustee,* 1 *Del. Ch.* 120, is an early Delaware authority in harmony with the rule stated above. In that case, the heirs-at-law of a deceased lunatic were allowed to except to accounts of the trustee which had been previously passed by the Chancellor. The use of exceptions filed after leave had been granted was expressly sanctioned as proper procedure and practice for the purpose of re-examining the accounts. It is to be remembered that the statutes relating to accounts of trustees for insane persons have remained in substance the same since that case was decided.

This procedure and practice have not been changed by the rules of the Court of Chancery. *Rules* 143 and 144, in a section which deals generally with the subject of trustees for insane persons, relate to accounts of such trustees, but contain nothing inconsistent with the practice approved by the *Vinson* case. They are as follows:

"Rule 143. Every trustee shall at least once in two years from the date of his appointment, and as often at other times as the Chancellor shall direct, make before the Register in Chancery a just and true account of all the property and estate of the lunatic which have come into his hands, custody or possession, and exhibit vouchers for all payments made by such trustee, with an affidavit that the said account is true and correct.

"Rule 144. The accounts of trustees shall contain an affidavit of the trustee that it is true and correct, and be audited by the Register in Chancery, after an examination of the vouchers for all payments, and he shall certify thereon whether, or not, he finds the same correct. When so audited the account shall be submitted to the Chancellor for approval."

But the former trustee and the intervenors contend that the time for excepting to accounts of a trustee is limited by *Rule* 177 to a period of fifteen days from the filing of the account. This rule is in a section entitled "Trustees and Trustees' Accounts", comprising *Rules* 171 to 190, which in practice have been accepted, in so far as they are applicable, as governing matters relating to trustees for insane persons. In order better to understand *Rule* 177, it should be read together with the two preceding rules, all of which are as follows:

"Rule 175. Every trustee shall file with the account a statement of the names and post office addresses of all the trust beneficiaries then interested in the account, and show whether the beneficiaries are of full age or minors, and the names and post office addresses of the guardians, if any there be, of all such trust beneficiaries as are then minors; and if it be a distributive or final account, shall also file a schedule of any proposed distribution of the principal of the trust estate, or a part thereof. In case the names or addresses of the persons then entitled to the trust property, or their shares or interests therein, are not known to the trustee or cannot be ascertained after diligent inquiry, this may be so represented by the trustee.

"Rule 176. Any person interested who has not been named in said statement may except to said trustee's account, notwithstanding any approval thereof by the Chancellor.

"Rule 177. Upon the filing of an account with the statement above mentioned, the Register in Chancery shall forthwith mail to each of said beneficiaries who are of full age a notice in writing of the filing of the account and that the same will be open for inspection and exception for fifteen days from the date of filing the account. In case any such beneficiary shall be a minor having a guardian appointed in any manner, such notice shall be mailed to such appointed guardian. The Chancellor may make an order for publication of notice of the filing of such account in cases where the names and addresses of the beneficiaries, or their shares, are not known or cannot be ascertained."

Plainly, the matters relating to exceptions are inapplicable to accounts of trustees for insane persons. *Rule* 177 requires notification to the trust beneficiaries that an account is open for inspection and exception for fifteen days. The only beneficiary of the trust created when a trustee is appointed for an insane person (and it is more in the nature of a guardianship than a trust in the usual sense) is the insane person himself, to whom a notification would be meaningless. This court should be reluctant to construe its rules so as to cut off the remedy of exceptions to insane persons who fail to act pursuant to a notification they could not reasonably be expected to understand. That the prescribed notification is the essential basis of the limitation of time for exceptions is clear from *Rule* 176, which provides that a beneficiary not named in the statement of those to whom notice is required to be given, may except to an account notwithstanding approval. Here, the insane person was not named in any such statement. Even if she had been, it would not matter.

The successor trustee relies on *Rule* 185 as supporting his position that exceptions may be filed. On the other hand, the former trustee and the intervenors contend that the rule does not contemplate exceptions as the proper procedure to assert or enforce the liability referred to in the rule. It reads thus:

"Rule 185. The approval by the Chancellor of an account shall not operate to relieve the trustee from any liability for any loss of, or injury to, the trust estate or property, which shall occur through the act, neglect or default of such trustee, or which shall have resulted from any fraud, deception or concealment by the trustee."

As we have seen, exceptions to approved accounts of trustees for insane persons were held proper in the *Vinson* case, *supra*. It does not seem to me that the quoted rule modifies the practice approved by that case, without regard to its effect or operation with respect to accounts of trustees for others than insane persons. The latter subject, it is unnecessary to consider or pass upon.

Since a successor trustee for an insane person owes a duty to manage and protect the property of the lunatic, it follows that a successor trustee is a proper person to except to the accounts of his predecessor, after obtaining leave so to do. The same conclusion follows from an application of *Rule* 190, one of the rules dealing with the subject of trustees and their accounts generally. This rule directs successor trustees to "examine the acts, and conduct of the preceding trustee or trustees in administering the trust, and report to the Chancellor any delinquency or mal-administration of such preceding trustee * * *." No reason has been suggested why this rule should not apply to successor trustees for insane persons. It is implicit in the rule that a successor trustee may challenge by appropriate procedure the administration of the trust by his predecessor; and the procedure of exceptions is appropriate to call in question the approved accounts of a trustee for an insane person.

The former trustee and the intervenors insist that the successor trustee is barred by laches. In view of the foregoing conclusions and of the fact that the successor trustee proceeded with reasonable promptness after his appointment, and after the former trustee had filed his final account, this contention seems wholly without merit.

However, leave should not be granted to file exceptions which on their face are insufficient. Applying to this case the rule of the authorities previously mentioned, the successor trustee must sustain the burden of attacking this approved account. Consequently, he must allege matters which, if established, would necessitate the disallowance of credits claimed in the account, the surcharge of amounts not included in it, or some other revision of the account. The *prima facie* correctness of the account arising from its approval, implies that the account shows correctly the trust funds held by the trustee during the accounting period; and that the credits claimed represent items properly de-

ductible in the amounts, in the manner, and for the purposes stated in the account.

Tested by these principles, certain of the proposed exceptions are insufficient. I shall quote and comment upon them separately.

"1-A. Exception is taken to the item entitled 'Income Over-expended' appearing on Schedule K of said account, totaling $8,781.18, for the reason that the said sum of $8,781.18 fails to include all disbursements actually made by said Trustee in excess of income received from the Trust Estate."

The fact alone that the trustee failed to claim credit for some disbursements is no ground upon which to disallow items of disbursements for which he did claim credit.

"1-B. Exception is taken to the item entitled 'Income Over-expended' appearing on Schedule K of said account, totaling $8,781.18 for the reason that said William Schwartz, Trustee, was neither empowered nor authorized to make disbursements in excess of income."

The item objected to does not represent any specific payments, but is merely a statement of the amount by which the expenditures exceeded the income. All of such expenditures being *prima facie* proper, and no objection being made to any of them by this exception, it does not contain enough to overcome the presumptive correctness of the account.

"2. Exception is taken to the item entitled 'Expenditure for Account of Installment Owners' appearing on Schedule 2 of said account totaling $5,127.92, for the reason that William Schwartz, Trustee, was neither empowered nor authorized to make such expenditures from the Trust Estate; that there was no obligation by the Trustee to make such expenditures."

It does not appear that the expenditures were of a kind which could not have been authorized by order of the Chancellor, if the trustee had sought in advance specific authority for making them. This being so, the mere fact that they were unauthorized does not necessarily mean that they must be disallowed. Although expenses be not properly incurred, the trustee is entitled to credit for them "if and to the extent

to which he has thereby in good faith benefited the trust estate." 2 *Scott on Trusts*, § 245.1; 1 *Restatement of the Law of Trusts*, § 245; 4 *Bogert on Trusts and Trustees*, § 971. The allegation that there was no obligation by the former trustee to make the expenditures means, I take it, no more than that the payments were not in satisfaction of any indebtedness or obligation of the trust estate, incurred pursuant to any power or authorization. The presumption in favor of the account is not overcome by this exception.

Exception numbered 3 is insufficient because the only grounds alleged are those discussed under exceptions 1-A and 2 above. The same applies to exception numbered 4 which, however, contains an additional allegation that there is no evidence that the trustee did make a certain expenditure for the purpose stated in the account. It is hardly necessary to comment that the burden of challenging the item is not met by the assertion that there is no evidence to support it.

"9. Exception is taken to the item entitled 'Stocks' appearing on Schedule 'L' of said account, totaling $6,281.50, for the reason that the said Trustee failed to convert such securities into legal trust investment in violation of his duty as Trustee."

"10. Exception is taken to the item entitled 'Stocks—

76 shares Progressive Realty Co. ..................................... $1,000.00
60 shares Fourth St. Improvement Co. ........................... 2,000.00'
appearing on Schedule 'L' of said account, for the reason that such investments were retained or obtained by William Schwartz, in violation of his duty as Trustee."

The purpose of these exceptions is not apparent. Assuming the stated grounds of exception to be true, it does not appear that any loss had been sustained at the time of the first accounting. The order approving the account was made "without passing upon the manner in which the principal of the trust has been or is now invested." Consequently, with relation to this subject, there has been no consideration or determination of any kind by the Court

of Chancery. If the securities were still held by the former trustee when he resigned, or if a loss was sustained between the time of the first accounting and the resignation of the trustee, it would be futile now to determine the extent or amount of any possible loss or diminution in value existing as of the time of the filing of the first account. Depending upon the facts, exceptions to the final account, or a petition under *Rule* 188 for an order disapproving the manner of investment of the trust fund would afford appropriate and adequate relief.

The remaining exceptions assert losses due to negligence and mismanagement, and the failure to account for certain property. As a ground of his motion to dismiss the petition, the former trustee charges that all of the exceptions are "vague, ambiguous, meaningless, and lack particularity." This ground was not discussed in the argument or briefs. Since I entertain some doubt as to the sufficiency of at least one of the remaining exceptions from the standpoint of certainty. and particularity, the parties will be allowed an opportunity to argue this question. For the present, the motions to dismiss the petition should be denied. However, for the reasons above set forth, leave will not subsequently be granted to file the exceptions numbered 1-A, 1-B, 2, 3, 4, 9 and 10, as they are now proposed.

An order accordingly will be advised.