In the Matter of SARAH K. SCHWARTZ, an Insane Person. Exceptions to First Account of William Schwartz, former Trustee.

*New Castle, September 30, 1943.*

*Collins J. Seitz,* for Stewart Lynch, successor trustee.

*James T. Mullin,* for William Schwartz, former trustee.

*James R. Morford,* of the firm of Marvel & Morford, for United States Fidelity and Guaranty Co., intervenor.

*William Poole,* of the office of Southerland, Berl & Potter, for Indemnity Insurance Company of North America, intervenor.

PEARSON, Vice-Chancellor: The accounting period involved is from the date of the appointment of the former trustee, May 9, 1928, to July 31, 1929. Only the intervenor United States Fidelity and Guaranty Company filed briefs in opposition to the exceptions, but the contentions urged were concurred in by the former trustee and the other intervenor. Hence, arguments referred to in this opinion as made by the intervenor should be understood as having been made by the former trustee as well as both intervenors. The exceptions will be taken up separately.

*Second Amended Exception 1—A:*

"1-A. Exception is taken to the item entitled 'Income Over-Expended', appearing on Schedule K, captioned 'Income Expended,' of said Account, totaling $8,781.18, because there resulted therefrom a loss to the trust estate from this invasion of the trust corpus which the Trustee was neither empowered nor authorized to incur, and the Trustee was neither empowered nor authorized to make any of the disbursements appearing in Schedule K out of the trust corpus, all of which disbursements resulted in loss to the trust estate."

To enable a better understanding of the exception, most of Schedule K of the account will be quoted:

### Income Expended

| | |
|---|---|
| Expenses on Real Estate (Schedule 8) | $24,005.70 |
| Interest on notes payable (schedule 10) | 387.90 |
| Recording fees (schedule 11) | 137.25 |
| Legal fees (schedule 12) | 1,806.64 |
| Accountant fees (schedule 13) | 1,314.45 |
| Inspection fees—incident to Liberty Bldg. & Loan Assn. mortgage | 65.00 |
| Fidelity bond for Trustee (schedule 14) | 1,129.65 |
| Collector of Internal Revenue—Federal Income Tax— Sarah Schwartz | 20.99 |
| Office expenses (schedule 15) | 1,533.47 |

| | | |
|---|---:|---:|
| Miscellaneous expenses (schedule 9) ........................................... | | 1,553.55 |
| Allowances: | | |
|     Sarah K. Schwartz ................................................... | $2,800.00 | |
|     Mollie Schwartz ...................................................... | 3,100.00 | |
|     Goldie Schwartz ...................................................... | 3,100.00 | |
|     Dora Schwartz ....................................................... | 3,100.00 | 12,100.00 |
| Loss of Income: * * * [Involved in collection of rents] ........... | | 50.00 |
| Commission paid to Wm. Schwartz, Trustee representing 7.34% of the income received (7.34% of $38,124.56) ........ | | 2,801.14 |
| | | 46,905.74 |
| Income Over-expended ......................................... [Red figures] | | 8,781.18 |
| | | $38,124.56 |

The successor trustee takes the position that "the disbursements in Schedule K, except the allowances to the children [Mollie, Goldie and Dora Schwartz, daughters of the insane person], represent the necessary expenses of administering the trust and consequently had a claim on available income which was prior to the claim of the grown children to such income"; that "no authority can be found in the pleadings which authorized the accountant to charge any of the disbursements in Schedule K to disbursements from the trust corpus"; that the income for the period covered "was more than sufficient to pay all the disbursements therefrom except the allowances to the children"; that "at least $8,781.18 of the allowances to the children was paid from the trust corpus"; that the former trustee was not authorized to make the allowances out of the trust corpus; that "having shown an unauthorized invasion of the trust corpus with the consequent loss to the trust estate, the exceptant has shown a breach of trust and resultant damage to the trust estate sufficient to sustain the burden of proof imposed upon him." The exceptant relies upon the well recognized principle, stated in 2 *Scott on Trusts*, § 245, as follows:

"If the trustee exceeds his powers in incurring an expense, and no benefit is conferred thereby upon the trust estate, he is not entitled to indemnity for the expense thus incurred. * * *"

At the hearing, the intervenor moved that the exception be dismissed. A ruling was deferred, with the understanding that additional evidence might be offered if the motion should be denied.

There can be no question that, in Delaware, the powers impliedly conferred by the appointment of a trustee for an insane person do not include authority to distribute any of the property of the lunatic, principal or income, to adult children. An allowance of items of such disbursements, upon an accounting by the trustee, must depend upon special authorization prior to the payments, or subsequent approval and ratification by the court.

By a petition filed on May 23, 1928, the former trustee prayed for authority "to expend from the net income received by him as Trustee," for the support and maintenance of the insane person and her three daughters, Mollie, Goldie and Dora Schwartz, the sum of $50 a week for each. He averred in the petition that "the net income from the Estate of the said Sarah K. Schwartz from real estate rentals alone is in excess of Fifteen Thousand Dollars ($15,000.00) per annum; that interest on mortgages held by the said Trustee and other securities belonging to the said Sarah K. Schwartz will increase the annual income of said Estate to a sum in excess of Twenty Thousand Dollars ($20,000.00)." It appears from the petition that the three daughters had attained majority, but had been supported by their mother prior to the adjudication of incompetency. Annexed to the petition are affidavits of the daughters in which each stated that she was "personally acquainted with the income" of her mother's estate and that she knew and averred "that the income from said estate is ample to provide a weekly payment of One hundred and fifty ($150.) dollars for the support of" herself, her two sisters and one Dorothy

Schwartz, described as an infant and a ward of the insane person.

An order upon the petition was entered on May 23, 1928. It recites, among other things, the following:

"*  *  * it appearing that all of the persons who would be entitled to the Estate of the said Sarah K. Schwartz in the event of her death consent to the granting of *the prayers of said petition*  *  *  * and it further appearing that the said Sarah K. Schwartz would make *similar provision* for the support and maintenance of said daughters were she not of unsound mind,  *  *  *." (Italics supplied)

The trustee was authorized to pay to each of the three daughters "the sum of Fifty Dollars ($50.00) per week as an allowance for her support and maintenance." The trustee was further empowered to pay for the care and maintenance of the insane person not exceeding the sum of $50 per week.

No order, other than the one just discussed, has been referred to as supplying special authorization to pay sums to the daughters for their support. That order does not authorize payments out of principal of the estate. It is of no moment that the order omits express mention of "income" as the source from which allowances to the daughters should be paid. The order was predicated upon the averments and prayers of the trustee's petition, and the affidavits annexed. Among the averments were representations that the annual net income was ample to pay the allowances. The trustee prayed specifically for authority to expend sums "from the net income received by him." Thus, the trustee did not attempt to make out a case for the expenditure of principal, and did not ask for such relief. In view of the petition, and the character of the payments in question, the order could not reasonably be deemed to confer authority to pay any sums to the daughters, except out of income remaining after all other proper charges against income had been paid or provided for.

The intervenor contends that "the order of December 4, 1929, approving the account, gave *express* approval" of the encroachment on principal for the payment of the allowances "and, with all facts and figures fully disclosed, ratified, approved and confirmed all expenditures (including all such allowances) to the extent the same were in excess of income." The inconclusiveness of the order of approval has been previously considered, *In re Schwartz*, 26 *Del Ch.* 221, 23 *A.* 2*d* 822, and the discussion in that opinion need not be repeated. It is inaccurate to say that the approval of the account gave *"express* approval" of the encroachment on principal. Until the hearing on this exception, there had been no presentation to, or consideration or adjudication by, the Court of Chancery of the specific question whether the trustee should distribute principal to the daughters. Again, it is inaccurate to say that all facts and figures were fully disclosed. Surely, the account does not fully disclose the situation. And if it is meant that when the account was presented, the Chancellor could have examined the record papers in this matter, and could have found the petition and order filed a year and a half before, relating to the payments to the daughters, and from these and perhaps from other documents, could have assembled additional facts, this is still very far from a demonstration of full disclosure. Accounts of trustees for insane persons are presented *ex parte* and the procedure followed does not include a detailed examination by the court of the items of the account, much less a search through the records for possibly relevant matters. Under the circumstances here, the approval of the account was neither an approval, ratification nor confirmation of the payments.

The intervenor contends that the payments to the daughters were allowable expenditures and cites various authorities. However, no cases have been found which hold that a trustee for an insane person may, in the absence of an enabling statute, properly pay continuing support

allowances out of principal to adult children who, as in this case, are not incapacitated to provide for themselves. Such payments would be inconsistent with the performance of that fundamental duty of a trustee to preserve the property of the trust.

The intervenor argues that "if any of the items on Schedule K represent expenditures made by the Trustee in good faith for the benefit of the trust estate to preserve the res or for the care, maintenance and support of the ward, it makes no difference whether the charge upon a formal accounting was made to principal or to income." Further, the intervenor contends that the items on Schedule K, of expenses on real estate and allowances for the support of the insane person, are of a character which would justify their payment out of principal; and that treating them as so paid, the allowances to the daughters may be deemed to have been paid out of income. In the first proposition urged, the intervenor fails to give effect to the following elementary principle, 28 *C.J. p.* 1153:

> "The general rule is well settled that all expenditures by the guardian should be made out of the income and not out of the principal of the ward's estate unless expenditures out of the principal are authorized by order of court. Ordinarily such sanction should be obtained previous to the expenditure, but it is competent for the court to sustain such expenditure upon an accounting, if the showing is such as would have moved the court previously to have authorized it. * * *"

Again, the intervenor overlooks the requirements of *Rule* 174 *of the Court of Chancery* for the segregation of principal and income expenditures. The rule directs that in every account of a trustee there shall be a schedule showing:

> "(e) The deductions from principal, and when and for what purpose made. * * *
>
> "(g) The income paid out, and when, to whom and for what purpose paid."

Of course, the trustee did, in fact, segregate income and principal payments, and reported all of the items on

Schedule K as income expenditures. The account was prepared under the supervision of, a competent accountant retained by the trustee for the purpose. In any event, the essential fallacy of the contention lies in this: that the allowances to the daughters were properly payable only out of net income, that is, income remaining after the satisfaction of proper income demands in the administration of the estate; and the real estate expenses and support of the lunatic were not properly payable out of principal, since the income was actually sufficient to pay them.

The intervenor contends that the successor trustee has failed in his pleading and proof to meet the burden which rests upon him in order to overcome the presumptive correctness of the account arising from its approval. The intervenor seems to object that the facts upon which the successor trustee relies appear from the account itself and from the documents in the record file of this matter. However, no reason has been suggested or authority cited why the exceptant may not establish his case by facts thus disclosed.

It is urged that the exception as drafted is not directed specifically to the allowances to the daughters. Any lack of particularity in the exception was removed by the statement of the exceptant's position, at the hearing and in the briefs. The intervenor has argued the substantial questions at length in its brief, and no one seems to have been misled concerning the exceptant's theory of his case. The motion to dismiss this exception should be denied.

*First Amended Exception 4:*

"4. Exception is taken to the item entitled 'Income Expended on Rented Real Estate—Miscellaneous—817 Shipley Street', appearing on Schedule 8, sheet 2 of said account, totaling $220.84, for the reason that, if the amount was expended for the purpose stated, there resulted therefrom a loss to the trust estate which the Trustee was neither empowered nor authorized to incur, and for the further reason that such amount was not expended for the purpose stated."

The item of $220.84 is described in the account as "Allowance to Vacate" and refers to property known as 817 Shipley Street, Wilmington. From the evidence, it clearly appears that the item does not represent an expenditure of cash, or a credit against rent due, with respect to 817 Shipley Street as reported in the account. This being so, the burden shifts to the former trustee to establish that it was, nevertheless, properly allowable. The explanations of the former trustee and of two accountants called by the intervenor are insufficient. Those given by the former trustee are not wholly consistent with those of the accountants, and all are based largely on assumptions. The exact nature of the transaction indicated by the item does not appear, except that it was not as represented in the account. The exception must therefore be allowed.

### First Amended Exceptions 9 and 10.

These are directed to items of expenditures which may be grouped in two classes. The first includes premiums aggregating $227.50 paid for surety bonds furnished in order to obtain new certificates in place of lost ones. The exceptant contends that these payments resulted from negligence of the trustee in that he lost or mislaid the original certificates. It does not definitely appear that the original certificates were ever in the possession of the trustee, or that it was he who lost or mislaid them. The exceptant has failed to sustain the burden as to these items.

The second class of expenditures consists of fines aggregating $27.08 incurred in connection with payments on building and loan shares. While there is more doubt concerning these items, the evidence seems on the whole insufficient to establish that they were attributable to the fault or neglect of the trustee. Exceptions 9 and 10 should be disallowed.

## Second Amended Exception 1—B.

By this exception (omitting reference to particulars in which it has been abandoned) the exceptant asserts that there has resulted an unauthorized loss to the trust estate in the amount of $1,217.09 comprising commissions, withdrawals, and miscellaneous charges made by the trustee, which are not shown in his account, and which necessarily came from the trust principal. The exceptant furnished a detailed statement of transactions, taken from the trustee's books, from which he computes the net amount of the unreported diminutions of trust property to be $1,217.09. The intervenor does not dispute the individual items of the statement, but contends that the net figure should be $1,245.-82, and then proceeds to explain that the entire sum is offset by various credits which appear in the same books of the trustee. It should be noted that unless the offsetting credits are shown to be proper, the exception should be allowed; and that, in view of the exceptant's proof, the burden is clearly on the former trustee to establish the propriety of the credits. As to most of them, that burden has been met. Many of the book entries pointed out by the intervenor purport to refer to matters which, in equity, may be considered and applied in reduction of the net amount of unreported items above mentioned. However, with respect to credits aggregating $150, the proof is insufficient. One in the amount of $47 and another, $.25, appear as "Miscellaneous Credits" to the personal account of William Schwartz, trustee. The nature of any transactions they were supposed to represent is wholly undisclosed by the trustee's books or by any direct testimony. Being entries without description or explanation, they have not been demonstrated to be proper offsetting items.

Two other credits, one of $6 and the other of $96.75, appear on the books as over-deposits or overages. Although the trustee made some attempt to explain these items, he further testified that he did not have the slightest recollec-

tion of what they were; and the accountant who set up the trustee's books and supervised the preparation of the account testified that there was no way of determining whether the overages refer to property of the trust, or of the trustee, personally. Hence, these credits have not been shown to be proper. To the extent of the sum of the four credits, $150, the exception should be allowed.

*Second Amended Exception 3.*

By this exception, it is sought to surcharge the former trustee in the amount of the two "overages" or "over-deposits" discussed in connection with the preceding exception. Because of the disposition of that exception, the trustee will not be allowed credit for these items. Hence, there is no occasion to consider them as the subject matter of this separate exception. The exception should be disallowed.

An order accordingly will be advised.