EUGENE HOYLE,

*vs.*

EDITH HOYLE.

*New Castle, May. 12, 1949.*

*H. Albert Young,* for plaintiff.

*Robert C. Barab,* for defendant.

SEITZ, Vice Chancellor: Essentially this is a suit for an accounting between husband and wife.

Plaintiff Eugene Hoyle filed a complaint for an accounting against his wife, Edith Hoyle, who in turn filed a counterclaim. Plaintiff and defendant were married in Scranton, Pennsylvania, on May 1, 1944, and came to Wilmington, Delaware, some time in June or July of the same year. For a few months the plaintiff engaged as a partner in a garage business. In the latter part of September, 1944, both the plaintiff and the defendant commenced working as trolley coach operators. They continued this work up until their separation on September 26, 1947. Plaintiff and defendant are still husband and wife in law if not in spirit.

Both parties contend that they put substantial sums of their own money into the common fund accumulated during the period prior to their separation. Plaintiff alleges that prior to his marriage to the defendant he had accumulated $3000 in cash, which had been saved for him by his mother. He also contends that he earned several hundred dollars in

the garage business which he conducted after his marriage to the defendant. Finally, and it is not disputed, he earned several thousand dollars as a coach operator during the period from September 26, 1944, to the time the parties separated on September 26, 1947.

The defendant contends that aside from the several thousand dollars concededly earned as a coach operator during the period September 29, 1944 to the date of separation, she put into the common fund sums of money aggregating $7592.35, which she allegedly received from several sources.

Much of the testimony dealt with the question as to whether or not the plaintiff and defendant did in fact put such sums of money into the common fund which they admittedly kept. I find it unnecessary to resolve these factual disputes. The parties do agree that whatever money was received by either plaintiff or defendant went into a common fund and was commingled.

During the period when plaintiff and defendant lived together they purchased a piece of real estate, title to which was taken in both names. They also opened two savings accounts. In opening the accounts, both plaintiff and defendant signed papers for the banks reciting that either party could withdraw money, and that in the event of death the balance belonged to the survivor. Plaintiff and defendant agree that all of the expenses of the plaintiff, the defendant, and the defendant's minor daughter by a previous marriage were paid from the common fund. Further, they agree that the money from the fund was used to purchase the real estate which they now hold by the entireties, and was also the source of all the money deposited in both savings accounts. The money from the common fund was completely exhausted by being used for the purposes stated. The dispute here is over title to the property which replaced the common fund, i. e., the bank accounts and the real estate.

One immediately asks how effect can be given to the

apparent estates by the entireties created in the bank accounts and real estate and at the same time take into consideration the various sums which each party says he put into the common fund, and later permitted to be turned into properties presumably held by the entireties. I say this because to give full legal effect to an estate by the entireties in the realty and personalty would require a 50-50 division.[1] But, if I give each party credit for the share of money he or she put in the common fund, I will be ignoring the fact that this money was ultimately used to create estates by the entireties in both the realty and personalty.

As stated, all the money allegedly earned or brought into the marriage relationship went into the unsegregated common fund, which in turn was used in part to purchase the real estate and to create the bank accounts. When these facts are combined with the style of the bank accounts and the manner in which title to the real estate was taken, I conclude that, presumptively at least, the parties intended to make the money used to purchase the real estate and the money deposited in the savings accounts subject to estates by the entireties. See *Geist v. Robinson*, 332 *Pa.* 44, 1 *A.* 2d 153. To the extent that my conclusion also requires a finding that either party intended to make a gift, I so find from the evidence. There is no trustworthy evidence to the contrary, and counsel so concede.

Counsel for the defendant urges that under the decision of the Delaware Supreme Court in *Peyton v. William C. Peyton Corporations*, 23 *Del. Ch.* 321, 7 *A.* 2d 737, 123 *A.L.R.* 1482, the plaintiff as husband stood in a fiduciary position toward his wife. In consequence, defendant's counsel urges that because of this relationship the defendant is entitled to have the legal transfer of her assets to estates by the entireties set aside because she did not have the advice of independent counsel at the time. The situation

---

[1] Of course the usual attributes of such an estate would obtain if there was to be no division.

here presented is not within the scope of the decision in *Peyton v. William C. Peyton Corporation, supra.* The *Peyton* case held that under the complicated facts there presented nothing less than the advice of independent counsel for the wife was sufficient to validate the transaction. I do not believe the facts here presented are of such complexity or obscurity that the wife required counsel before she could legally contribute her money to the common fund, and thereafter render it subject to estates by the entireties. Indeed, the evidence demonstrates that the defendant was more aware of the implications of the action than her husband. She conceded that one reason she made all the deposits was because her husband was uneducated and wanted her to handle such matters. While other testimony of the defendant might indicate to the contrary, I find as a fact from the evidence that the defendant was not so dominated by her husband that she did not freely and affirmatively consent to the transactions with full knowledge of their import.

It is not disputed that the savings accounts, like the real estate, could legally be held subject to estates by the entireties. See *Ciconte v. Barba,* 19 *Del. Ch.* 6, 161 *A.* 925. As heretofore stated, there is no sufficient evidence to vary the inference as to intent which I have drawn from the testimony, the style of these accounts, and the fact that they specifically provided for the right of survivorship. The same conclusion applies to the realty.

It should be noted that while the bank accounts here were in the names of the husband and wife, the money could be withdrawn by either the husband or the wife. The fact that the money could be withdrawn by either spouse has been held in Pennsylvania not to defeat a finding of an estate by the entirety in such money because in such a situation each spouse is considered to be the agent of the other. This is deemed to satisfy the so-called "control" unity requirement of such an estate. See *Madden v. Gosztonyi*

*Savings & Trust Co.*, 331 *Pa.* 476, 200 *A.* 624, 117 *A.L.R.*
904; *Berhalter v. Berhalter,* 315 *Pa.* 225, 173 *A.* 172, 173.
I accept and adopt the reasoning and conclusion of the
Pennsylvania Supreme Court in this respect.

I conclude that the plaintiff and defendant as husband
and wife held the money on deposit as tenants by the entire-
ties. Consequently, each spouse was entitled to an undivided
interest in the whole of the money with the right of sur-
vivorship. Neither one was entitled to destroy this estate
without the consent of the other.

It is conceded that the defendant withdrew and retained
for her own benefit all of the money in the Wilmington Sav-
ings Fund Society amounting to $1725.58. The defendant
admits that she attempted to withdraw all the money in the
Security Trust Company amounting to $5001.47, and that
she did actually withdraw $5000. Defendant in her haste
failed to take the $1.47, and it was redeposited by the bank
teller. The defendant contends she gave the $5000 to the
plaintiff who kept it for himself. Plaintiff says the defend-
ant never gave any part of the $5000 to him, and on the con-
trary contends that she withdrew it and retained it.

A short statement of the background of the account in
the Security Trust Company will aid in disposing of the fac-
tual issue presented with respect to the $5000. The defend-
ant on June 5, 1947—while she and her husband were still
living together, but apparently having their differences —
withdrew $4790 from the account in the Security Trust Com-
pany, and on June 10 redeposited $5000. Plaintiff denies
that he ever knew of this withdrawal and redeposit. I accept
his testimony in this respect. Thereafter, the defendant tes-
tified that on June 13, being a Friday evening, she withdrew
$5000 in cash from the same account (overlooking the
$1.47). She testified that her husband had instructed her
to withdraw the money because he wanted to drive to Bal-
timore to spend the week-end, and he wanted to have the

money on hand in Baltimore in order to negotiate the purchase of some property in Baltimore on Monday. Defendant testified that her husband was working as a coach operator that Friday night; that she withdrew the $5000 in cash and later met her husband on one of his trips while operating a coach and gave him the money, which she says he placed in the lower portion of the money box on the coach. She testified that the next day she and her husband drove to Baltimore, at which time he had the $5000 in cash in the glove compartment of the car where it apparently remained over the week-end. According to defendant's testimony she and her husband left that sum of money in the car for a long period while the car was unattended and parked on a street in Baltimore.

While it is clear that the plaintiff was interested in acquiring property in Baltimore, it also appears that no purchase price had ever been mentioned at the time the plaintiff and defendant took this particular trip to Baltimore. Even defendant's witness so testified. Indeed, there was no assurance that the property could be purchased, and it turned out that the title was so held that it could not be purchased. Plaintiff denies that the money was ever withdrawn and handled in the manner indicated by the defendant, and I conclude from an examination of the evidence, in the light of the reasonable probabilities, that the defendant's testimony is not entitled to belief. I reach this conclusion because in my opinion her testimony in most every important respect was deliberately false. Indeed, it is so unlikely that the events narrated by defendant actually took place that her testimony can only be described as fantastic.

I shall not detail the many inconsistencies and variations in the defendant's testimony. I do point out that a few months after the $5000 was withdrawn by the defendant she paid $2700 in cash to purchase a Studebaker convertible car, title to which she had placed in her sister's name. She says she even used money received from the sale

of her furniture to help pay for the car. Under the circumstances, this is unbelievable, especially when she says she purchased the car for her sister and loaned her sister the purchase money. It was more than a coincidence that the Studebaker remained in Wilmington and was used by the defendant until almost the time of certain court proceedings which, *inter alia,* brought up the subject of the purchase of the car. Thereafter, it was taken to her sister's home in Scranton, Pennsylvania. It is also significant that the defendant never made any claim that plaintiff received the $5000 until she was sued in this court, although there had been many attempts to reach a property settlement and the matter had been mentioned in a criminal case involving both parties.

Other portions of the testimony emphasize the absurdity of the defendant's explanation concerning the $5000. I find as a fact that the testimony of the defendant and her sister with respect to this transaction is a complete fabrication, and I conclude that she used at least part of the $5000 she had withdrawn from the Security Trust Company to make the purchase of the car for her own ultimate benefit. She testified that the money with which she paid for the Studebaker was a loan to her sister, and stated that her sister had repaid $1000 to her. Her sister testified on deposition that she paid the defendant $1000 in cash just a few days before the taking of the deposition. However, she explicitly stated that this money was not in partial repayment of the money advanced by the defendant for the purchase of the car. Defendant says her sister was confused. The "confusion" in defendant's case was on a grand scale.

I am also fully persuaded from the testimony that the defendant sought to have at least one witness testify falsely with respect to a date of a certain happening in an attempt to prove to this court that plaintiff received the $5000. Her attempted intimidation of another witness was so bold that

it cannot be ignored in determining the question of her credibility.

The testimony of the defendant and many of her witnesses is so patently false that I think it would be a mockery to take the time of this court to delineate and point out additional infirmities therein. Indeed, the defendant's sister refused to sign her own deposition—small wonder. I conclude that the defendant withdrew the $5000 from the Security Trust Company and retained the entire amount for her own benefit. Since the money held by the entireties in these accounts is apparently not now subject to the jurisdiction of this court, we must ascertain what remedy plaintiff has under these circumstances.

No question of the bank's responsibility is involved. We are seeking to ascertain the husband's rights against his wife in this situation. I feel that the approach taken by the Pennsylvania court in *Berhalter v. Berhalter, supra,* is fair and intensely practical. There, the wife had withdrawn some of the money in such an account and treated it as her own. The court, recognizing that both parties may consent to the division of an estate by the entireties, said [315 *Pa.* 225, 173 *A.* 173]:

"When the wife in her own behalf and for her own use withdrew part of the fund from the bank, this action was tantamount to an offer to her husband to destroy the estate by entirety. As stated in *Zwolski v. Zwolski,* 75 *Pittsb. Leg. J.* 534, defendant appropriated, to her own use, the funds which plaintiff and defendant agreed to hold in an estate by entireties, and this constituted in law an election on her part to divide the fund. In this case, when appellee in a request for a conclusion of law asked for a division of the fund, this constituted an acquiescence in appellant's offer or election to divide the fund. In other words, by the act of the parties they agreed to divide the property subject to the estate by entirety."

Since I have concluded that the defendant withdrew and treated as her own all the money held by the entireties, it follows that if such money was now subject to the order of this court, it would be divided equally between the par-

ties on the theory set forth in the quotation from *Berhalter v. Berhalter, supra.* While the money withdrawn by the defendant is apparently not now available, she does possess an entirety interest in real estate which can be reached by this court. The defendant's undivided interest will, therefore, be impressed with a trust in an amount equal to what would have been the husband's share of the money held by the entireties, i.e., one-half of $6725.58 or $3362.79.[2]

The real estate on which this trust is to be impressed is held as an estate by the entireties. It is evident that if plaintiff is to procure the benefits of the trust here imposed, this court may have to require the defendant to take certain action. If the parties are unable to agree on a method for resolving this problem, the court will then resolve it for them.

The disposition of certain other items of property is also involved. Defendant concedes that plaintiff is entitled to have returned to him the 24 United States defense bonds now in her possession, while the plaintiff concedes that he must turn over to defendant the piano-accordion and the Buick sedan now in his possession. A factual dispute exists as to the source of the money used to purchase the movie projector and camera now in defendant's possession. I conclude from the testimony that money from the common fund was used to make this purchase, and that the projector is subject to an estate by the entireties. If the defendant is to retain the projector and camera, plaintiff should be granted a credit of 50% of their fair value. If the parties cannot agree on this amount, the court will determine it.

An order accordingly will be advised on notice.

Note. Reargument denied May 31, 1949.

---

[2] The $1.47 in the Security may be divided in the same manner.