93 A.2d 920 (1953)
In re GRIFFITH.
Misc. No. 15.
Court of Chancery of Delaware, New Castle.
January 19, 1953.
John M. Metten, Wilmington, for J. Watson Miller, Sr., successor-trustee for Albert Miller Griffith.
Thomas Herlihy, Jr. and Morris Cohen, Wilmington, for Edith Baker, executrix under the last will and testament of Hattie Griffith, deceased.
*921 BRAMHALL, Vice-Chancellor.
On March 12, 1948, Hattie Griffith was appointed by this court as trustee for her husband, Albert Miller Griffith, an insane person. She was duly qualified and acted as such trustee until her death on November 12, 1950. No inventory or accounting was ever filed with this court by Hattie Griffith during her lifetime. On November 22, 1950, Edith Baker was appointed as executrix under the last will and testament of Hattie Griffith, deceased. On *922 December 18, 1950, J. Watson Miller, Sr. was appointed by this court as successor-trustee for the estate of the said Albert Miller Griffith.
On March 7, 1951, Edith Baker filed her first and final account on behalf of Hattie Griffith, the original trustee for Albert Miller Griffith. Exceptions to this account were filed on behalf of J. Watson Miller, Sr., the present trustee, on April 19, 1951. The facts relative to these exceptions will be hereafter set forth as they relate to the particular exception under consideration.
Numerous exceptions were taken to this account. By stipulation of counsel it was agreed that only certain exceptions should be considered. The following questions are presented for determination:
(1) Failure of accountant to account for jointly owned personal property;
(2) The right of Hattie Griffith to charge the estate for expenses of the home incurred during her occupancy;
(3) Trustee's commissions.

1. Failure of accountant to account for jointly owned personal property.
This exception relates to a 1940 Plymouth automobile, valued at $650, and a joint bank account in the Artisans Savings Bank, amounting to the sum of $2,856.28. On October 18, 1950, the savings account was withdrawn in full by Hattie Griffith and redeposited in an account in her own name.
It is not disputed that this personal property was held by the husband and wife as tenants by the entireties. See Hoyle v. Hoyle, 31 Del.Ch. 64, 66 A.2d 130. In this state, under an estate by the entireties, the husband and wife hold nothing in severalty during the continuance of the estate, each owning the whole estate subject to being divested thereof upon his or her death prior to the death of the other tenant by the entireties. Sidwell v. Sidwell, 5 W.W.Harr. 322, 165 A. 334; Huber v. Penn Mutual Fire Insurance Co., 3 Terry 369, 33 A.2d 729. Such estate cannot be destroyed by the act of one party without the consent of the other. Hoyle v. Hoyle, supra; Carlisle v. Parker, 8 W. W.Harr. 83, 188 A. 67.
The record is silent as to what, if any, use was made by Hattie Griffith of the money which she withdrew from the joint account and redeposited in her own name. There is nothing before the court to show that she used any of this money for the benefit of her husband or for her husband and herself jointly. The question for determination therefore is what was the effect upon the estate by the entireties of the withdrawal by Hattie Griffith of the whole of the account.
In the case of Hoyle v. Hoyle, supra, this court, adopting the language used in the case of Berhalter v. Berhalter, 315 Pa. 225, 173 A. 172, construed the withdrawal of the account in that case as an offer on the part of the person making the withdrawal to terminate the tenancy by the entireties. This court further stated that the action of the other tenant by the entireties in seeking a division of the fund, constituted an acceptance of the offer. The present case is distinguished from the Hoyle case in that Albert Miller Griffith, the other tenant by the entireties, had been adjudicated an insane person. He could not therefore give his consent to such an offer and his trustee would not have the authority to do so on his behalf. In fact, she was bound to take all proper and reasonably necessary steps to protect, preserve and safeguard the property of the trust estate. It was her duty as trustee to restore to the trust estate any property or funds which she may have appropriated to herself or which she may have wrongfully aliened or encumbered to another. Her duty in that respect was not terminated by her death. See cases cited in 54 Am.Jur., § 338, p. 266.
The record shows only a withdrawal of the account and a redeposit of the same amount in her own name, without any explanation therefor or without any accounting as to the amount withdrawn or any part thereof. The fact that the trustee attempted to destroy the relationship of tenants by the entireties by the withdrawal of the funds does not change the rights of the parties in any respect for she could *923 not destroy this relationship without the consent of her husband. Hoyle v. Hoyle, supra. This consent he was unable to give and she as his trustee was duty bound not to impair the assets of the trust estate.
There is no presumption flowing from the marital relationship that one spouse in attempting to transfer an estate held by the parties by entirety acted as agent for the other. Grambo v. South Side Bank & Trust Co., 141 Pa.Super. 176, 14 A.2d 925. The fact that the husband's mental or physical condition was such that he was incapable of transacting business would not constitute the wife as general agent or vest her with a general or unlimited authority as to all his affairs. Barron v. McChesney, 198 Iowa 657, 200 N.W. 197-198. Since in withdrawing the account and converting the money to her own use the trustee acted without authority, the proceeds of such act would inure to the benefit of both and the estate by the entireties was not terminated. Kauffman v. Stenger, 151 Pa.Super. 313, 30 A.2d 239, and cases cited in 41 C.J.S., Husband and Wife, § 35, p. 485.
Where as here, the whole of the account was withdrawn, the joint form of the account, of itself, raises a presumption of fact or inference that the joint interest of the depositors follows the funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint estate and appropriated by the drawer to her own use. O'Connor v. Dunnigan, 158 App.Div. 334, 143 N.Y.S. 373, affirmed in 213 N.Y. 676, 107 N.E. 1082; Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28, 77 A.L.R. 782, Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870.
The facts in the case of O'Connor v. Dunnigan, supra, [158 App.Div. 334, 143 N.Y.S. 373] are quite similar to those in the present case. In that case a man and wife deposited moneys in a bank in their joint names with the provision "Pay to either or the survivor of either". The wife withdrew all the moneys and deposited them in a bank to her own individual credit. Three days afterwards she died. An action was brought by the husband against the executors of the wife's will to recover the moneys withdrawn. In decreeing a recovery of all the moneys withdrawn by the wife, the court said: "It would be preposterous to claim that an appropriation of personal property by one joint owner to his personal use could divest the interest of the other joint owner". The O'Connor case was cited with approval by the Moskowitz and Ambruster cases above cited.
The automobile in question was also held by the husband and wife as tenants by the entireties. It also, or the proceeds thereof, became the property of the husband upon the death of the wife.
I therefore conclude that the husband, Albert Miller Griffith, is entitled, as the surviving tenant by the entireties, to the whole of the bank account and to the automobile or the reasonable value thereof.

2. The right of Hattie Griffith to charge the estate for expenses of the home incurred during her occupancy.
The second question raised by the exceptions concerns certain charges,  including taxes, water rent, insurance, sewer rent, and other disbursements for which the accountant has taken credit , in the maintenance of the home owned by Hattie Griffith and her husband, Albert Miller Griffith, as tenants by the entireties. It is contended by the successor-trustee for Albert Miller Griffith that the accountant was without authority to charge the estate of Albert Miller Griffith for expenses incurred on said property during the period of the occupancy thereof by the deceased on the ground that these expenditures were for her exclusive benefit.
I do not agree with this contention. As previously stated, the property was owned by the deceased and her husband as tenants by the entireties. It was the home of both of them. Upon his recovery the husband could have returned. As far as the record shows, no attempt was ever made by the deceased to exclude him therefrom or to limit him in his enjoyment thereof. Apparently the income from the estate was sufficient to pay the expenses *924 of Albert Miller Griffith at Farnhurst and leave something over for the maintenance of his home and family. The fact that he was under a disability did not relieve him of his responsibility for the maintenance of his home and the support of his family if the income from his estate should be sufficient to so provide. See decisions cited in 44 C.J.S., Insane Persons, § 115. The items to which exception has been taken were necessary for the maintenance of their home and for the preservation of the estate by the entireties. No other provision was made on behalf of Albert Miller Griffith for the maintenance of the joint home of himself and his wife or for the maintenance of the wife. It does not appear that the expenditures were of a kind which could not have been authorized by order of the Chancellor, if the trustee had sought in advance specific authority for making them. This being so, the mere fact that they were unauthorized does not necessarily mean that they must be disallowed. Although expenses be not properly incurred, the trustee is entitled to credit for them "if and to the extent to which he has thereby in good faith benefited the trust estate". In re Schwartz, 26 Del.Ch. 121, 23 A.2d 822, 827.
The exceptions as to these items will be dismissed.

3. Trustee's Commissions.
The last question raised by the exceptions relates to the right of the accountant to charge commissions in the administration of the estate of Albert Miller Griffith, based upon the fact that Hattie Griffith in her lifetime failed to file an inventory or appraisal of the estate. No account was ever filed by Hattie Griffith in her lifetime accounting for her administration of the estate.
It is true that no inventory or appraisal was filed during the lifetime of Hattie Griffith. However, it is not shown that the estate has suffered in any manner by reason thereof. Her services were definitely valuable in the collection of the income and in the preservation of the principal of the estate. In addition, it must be considered that Hattie Griffith in her lifetime received no direct support from her husband's estate. She collected the rents on the various properties of the estate of her husband, kept them rented and presumably from the number of bills for repairs as shown in the final account, maintained the properties in a reasonable state of repair. There were seven parcels of real estate under the supervision of Hattie Griffith, four of which were occupied by tenants. The period of her administration was for two years and eight months. Considering the fact that the estate was otherwise apparently well administered and also taking into consideration the fact that Hattie Griffith received nothing therefrom as the wife of Albert Miller Griffith, directly for her support, I do not feel that this item should be disturbed. This exception will be dismissed.
An order will be signed on notice in accordance with this opinion.