**Ellen FACCIOLO, Defendant-below Appellant,**

**v.**

**STATE of Delaware, DIVISION OF REVENUE, Plaintiff-below Appellee,**

**v.**

**James V. FACCIOLO, Defendant-below Appellee.**

Supreme Court of Delaware.

Submitted Oct. 22, 1975.

Decided April 28, 1976.

Carl A. Agostini, Roeberg & Agostini, Wilmington, for defendant below, appellant.

A. Gary Wilson, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Francis J. Trzuskowski, Kipp & Trzuskowski, Wilmington, for defendant below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

PER CURIAM:

The defendant, Ellen Facciolo, appeals the Superior Court's denial of her motion to vacate the joint liability judgment obtained by the State for unpaid personal income taxes. The judgment stemmed from a 1970 joint Delaware income tax return, signed for Mrs. Facciolo by her husband, and a "combined separate" State income tax return filed for 1971.

In the Superior Court, Mrs. Facciolo asserted that she had not signed, nor authorized anyone to sign on her behalf, the tax returns on which the judgment is based. Further, she contended that even had she signed the 1971 "combined separate" form, her liability would be only for the amount of tax attributable to her separate income.

The Superior Court denied the motion to vacate, holding that between Mrs. Facciolo and her husband an agency relationship existed which had not been terminated by her prior to the filing of the returns. In addition, the limited liability argument was rejected as to the 1971 return, the Court holding that since the combined separate return indicated but a single amount due, there was *de facto* consent to a joint obligation.

## I.

 With regard to the 1970 tax return, certain general rules appear applicable: there is no presumption of agency in a marital relationship. *Borrello v. Lauletta*, Pa.Supr., 455 Pa. 350, 317 A.2d 254 (1974); *cf. In re Griffith*, 33 Del.Ch. 387, 93 A.2d 920 (1953); and the party asserting the existence of agency (here the State) has the burden of proving it, *Taylor v. Armiger Body Shop*, 40 Del.Ch. 22, 172 A.2d 572 (1961).

 The State argues that Mrs. Facciolo admitted that, prior to the returns in question, she never shared with her husband the responsibility for the preparation and filing of the family income tax returns. But "preparation and filing" are not the critical issues here. Indeed, authorization is commonly given to another to prepare a tax return or to file it: accountants often do the former and the latter action in many instances amounts to no more than a mailing. The crucial issue in this case, however, is Mr. Facciolo's authority to *sign* his wife's name to one or both of the returns. That is the definitive act which would make the return her own, with all of the attendant civil and criminal penalties.* And as to the signing practice, Mrs. Facciolo testified on cross-examination:

"Q Have you ever had the responsibilities, while you were married to Mr. Facciolo, of caring for the accounting, the financing, the filing of income tax returns?

A No.

Q So you really never had a hand in them?

A No, but I always sign them.

Q Pardon me?

A I always signed them up until 1969.

Q But probably the way it would work, and tell me if I am not correct, that the accountants, or Mr. Facciolo, would prepare the returns; and Mr. Facciolo, or the accountants, would give you the return, and you would sign it in past years, the past 20 years?

A That is right.

Q Isn't that the way it always worked?

A Yes."

In brief, Mrs. Facciolo testified that she always signed the tax returns.

And as to Mr. Facciolo, the Trial Court stated:

"James Facciolo testified that he handled business affairs during his twenty-year marriage with Ellen Facciolo; that, if available, she would customarily sign a joint tax return; but that he would sign her name if she was unavailable, as occurred from time to time."

On this record, it appears undisputed that Mrs. Facciolo at least "customarily" signed the tax returns; and the only exception to which Mr. Facciolo testified was that he would sign his wife's name if she

---

\* The Declaration at the foot of the return, to which the "signature of taxpayer" subscribes, reads as follows:

"I/we hereby certify and declare that this return (including any accompanying schedules and statements) has been examined by me/us and to the best of my/our knowledge and belief is a true, correct and complete return."

See 30 Del.C. § 1172.

was "unavailable." There is no showing that she was unavailable to sign the returns in issue.

In sum, the testimony shows that Mr. Facciolo had authority to prepare and file tax returns for his wife but it does not show that he was authorized to sign the 1970 and 1971 returns for her.

Accordingly, the State has failed to establish the authorization of Mr. Facciolo to sign the returns for his wife. It follows that the judgment below must be reversed as to the 1970 return.

## II.

As to the 1971 return and the limited liability contention: it appears that for 1971 State income tax returns, married couples had the choice of filing a joint return, separate returns, or a "combined separate" return. Mr. and Mrs. Facciolo chose the last option, which allowed the separate computation of each individual spouse's income and tax obligation. Only after this process was completed were the two separate amounts totaled to allow spouses filing individually to pay their tax assessment in one lump sum. The State contends this evidences a joint obligation, requiring Mrs. Facciolo to pay the entire tax due—$2,197.00—even though her personal obligation was only $7.00.

Since the 1971 return was not a joint return, *ipso facto* it was a separate return. Thus, the wife was liable only in the amount directly attributable to her individual income, and was not jointly and severally liable for the combined tax due on the 1971 return. Accordingly, the judgment below must be reversed as to the 1971 return.

\* \* \* \* \* \*

Reversed.