DARAMUS, APPELLEE, *v.* HATEGAN, EXR., ET AL., APPELLANTS.

(No. 27255—Decided June 17, 1965.)

*Messrs. Rippner, Schwartz & Carlin,* for appellee.

*Mr. John J. Sibisan,* for appellant the Reverend Father Vasile Hategan, Exr.

*Mr. Keith Lawrence,* for appellant Second Federal Savings & Loan Assn. of Cleveland.

*Messrs. Burke, Haber & Berick,* for appellant The Ohio Savings Assn.

Kovachy, J. This is an appeal on questions of law from a judgment entered in the Probate Court of Cuyahoga County.

Nicholas T. Daramus, hereinafter referred to as plaintiff, filed a petition with two causes of action for declaratory judgment in which he asked the Probate Court to adjudge and declare that two bank accounts which had been included in the inventory and appraisement of the estate of Bobby Dumetroff, deceased, hereinafter referred to as decedent, and which were savings deposit accounts in the individual name of Bobby Dumetroff, be determined and adjudged joint and survivorship accounts with rights of survivorship in himself.

The salient facts are not in dispute and are as follows:

Some time prior to his death, decedent opened a savings account in his name with the Second Federal Savings & Loan Association of Cleveland, hereinafter referred to as Second or Bank, and The Ohio Savings Association of Cleveland, hereinafter referred to as Ohio or Bank. These savings accounts in the individual name of the decedent showed a balance of $10,965.47 in the former financial institution and a balance of $8,856.01 in the latter at the time of decedent's death on May 5, 1963.

On March 15, 1963, plaintiff and decedent went to the main office of Ohio and obtained a signature card for a joint and survivorship account from one of the tellers and both signed the same in the presence of the teller. The teller instructed them to take the card with them but to bring it back with the passbook of decedent's individual savings account. The decedent never returned to the bank with the signature card or the passbook as instructed. Following decedent's death, however, plaintiff went to the main office of Ohio with the signature card and was referred to a branch office. Upon plaintiff presenting himself there, a teller stamped the reverse side of the signature card and advised plaintiff that the owner of the individual account must sign the reverse side. The stamp was as follows:

"I hereby request and authorize The Ohio Savings Association of Cleveland, Ohio, to add the name of Nicholas Daramus to savings account No. 8455, making it payable to either of us, or the survivor.

"Date............    Signature (x)..............."

The rules of Ohio printed on decedent's passbook and consented to by decedent in writing when he opened his individual savings account state, in parts pertinent to our consideration, as follows:

"* * * This passbook is issued, and by the acceptance hereof, is held subject to all the provisions of the * * * constitution and by-laws of the undersigned, as now existing or as may hereafter be amended and is transferable on the books of the undersigned by the holder hereof in person, or by duly authorized attorney, upon surrender of this passbook accompanied by a properly executed order to make said transfer. The undersigned may treat the holder of record as the owner for all purposes, without being affected by any notice to the contrary, until this passbook is transferred on the books of the undersigned. Passbooks will not be transferred unless and until the transferee has made proper application for and has been accepted as a depositor of the undersigned.

"* * *

"If this passbook is made payable to two or more persons and the survivor or survivors of them, it shall be the property of and payable to the survivor, or survivors, and such payment shall be a full acquittance of the Association for the deposit or deposits made herein."

That statement is signed by the President and Executive Vice President on behalf of The Ohio Savings Association.

The facts as regards Second are similar:

On April 1, 1963, plaintiff and decedent went to the main office of Second where they obtained and both signed a signature card for a joint and survivorship account in the presence of an officer, with instructions to return with the card and passbook of the decedent for his individual savings account. Here, too, the decedent never returned with the passbook or signature card.

The evidence testified to by officers of both Ohio and Second was that an additional name will not be added to an individual savings account without the production of the passbook of such account. When the passbook is returned to the bank, the new name or names may be added to it or it may be cancelled and a new passbook issued, and it is only then that a corresponding change is made on the ledger of the bank,

which then completes the transaction and opens the way for withdrawals by either of the persons named and establishes the survivorship rights.

The declaratory judgment case in Probate Court was tried before a referee who ruled that the two savings accounts belonged to the estate of Bobby Dumetroff, deceased, and that no joint and survivorship accounts had been created with either Ohio or Second.

Upon appeal to the judge of that court, the decision of the referee was reversed, the court finding "that a valid joint and survivorship ownership to both savings accounts was created by the decedent and this plaintiff-petitioner." Judgment was entered thereon, which judgment was appealed to this court by the Reverend Vasile Hategan, executor of the estate of Bobby Dumetroff, deceased, hereinafter referred to as defendant, and defendants Second and Ohio.

Defendant for his assignment of error states that:

"The Probate Court committed prejudicial error in reversing the decision of the referee and entering a judgment in the two causes of action declaring that both savings accounts in the name of the decedent at Second Federal Savings & Loan Association of Cleveland and The Ohio Savings Association of Cleveland were the property of the plaintiff-petitioner."

Defendant contends that under Ohio law a joint and survivorship account is created by a contract between the depositor and the financial institution, creating a relationship of creditor-debtor between the depositor and financial institution, and that under the facts in this case no such contract had been consummated.

Plaintiff, while allowing that under established Ohio law a joint and survivorship account is based on a contract between the depositor and the financial institution, maintains that, since the decedent signed a signature card styled "Joint and Survivorship Account" in the presence of a bank employee for each of his individual accounts, a contract was created between him and the financial institution as to each such account, vesting ownership and creating a right of survivorship in the plaintiff.

The law is well-settled in Ohio that joint and survivorship accounts in financial institutions are valid arrangements to provide for the withdrawal of funds by any one of two persons,

parties to such arrangement, with the right of withdrawal of the balance remaining in the account by the survivor upon the death of one of the parties. The landmark case enunciating this principle of law is *Cleveland Trust Co.* v. *Scobie, Admr.*, 114 Ohio St. 241, 48 A. L. R. 182, in which the Supreme Court stated in its syllabus that:

"Where a person opens a savings account in a bank to the joint credit of himself and another, payable to either, and balance at death of either payable to survivor, the authority to remain in full force until receipt by the bank from the depositor of written notice of its revocation, and the record shows that the depositor intended to transfer to the person to whom he made the account jointly payable a present joint interest therein equal to his own, and the passbook has been left in the possession of the bank for withdrawals by either party on the joint account, a joint interest is created in the right of the depositor in the deposit, and the person to whom the deposit is made payable jointly with the depositor, upon the death of the depositor, without his having revoked the authority to draw, is entitled to the balance of the account."

The basis for that proposition of law is that since a savings account establishes a credit and debit relationship between the depositor and the financial institution the depositor may by contract with the institution transfer a present joint interest equal to his own to another, and provide that the other have equal rights with himself to withdraw from the account and that the balance, upon the death of one, be paid to the survivor. The juridical efficacy of such an arrangement does not rest upon the theory of a gift or a trust but upon a mutual understanding between the depositor and the institution that the consideration for depositing the money be the liquidation of the credit on the books of the institution in the manner agreed upon.

In the case of *Bauman* v. *Walter*, 160 Ohio St. 273, at page 276, Judge (now Chief Justice) Taft of the Supreme Court of Ohio in discussing the *Scobie case* stated:

"* * * The reason given for that decision was that the one opening the account acquired, in consideration of payment of the money deposited, a promise by the bank to pay the amount deposited either (a) to the depositor or (b) to the other named party or (c) to the survivor. This promise to pay to the survivor,

on the death of either of the alternatve living obligees, was held to create in each obligee a contractual right to the amount of the deposit if such obligee became the survivor of the obligees. When the one opening the account died, the survivor then would have such a contractual right which would no longer be contingent upon such survival and no longer subject to the extinguishment which would necessarily result from an exercise by the one opening the account of his right to withdraw the whole of the amount deposited."

It seems clear from the above that until an account styled a "joint and survivorship account" is opened by mutual agreement of the depositor and the financial institution no rights can vest in a person intended to be made a party thereto. Was such an account created with either of the banks in the instant case?

The decedent had a savings account in his individual name with each of the banks. When he opened the account he agreed to abide by the rules and regulations of the bank. The rules of each bank require that in changing an individual account to a joint and survivorship account the passbook must be turned over to the bank so that it can either add the additional name or names to the individual account with a notation that the account is transferred to a joint and survivorship account or cancel the existing passbook and issue a new passbook in the names of the parties to the new account. The transfer of the individual account to a joint and survivorship account is not recorded on the ledger until such procedure is followed.

The decedent did not return to the banks with the passbooks as requested by the banks and as required by the rules and regulations of the banks, and as a result no joint and survivorship account came into existence in either bank. Since the establishment of a joint and survivorship account by mutual agreement with the bank is a prerequisite to the creation of any rights in any person intended to be a party, it necessarily follows that the plaintiff had failed to show any right to the monies deposited in the individual account of the decedent.

In the case of *Gall* v. *Central Trust Co.*, 57 Ohio App. 168, paragraph one of the syllabus reads:

"1. Reasonable rules and regulations adopted by a bank,

printed in its pass book and agreed to by the depositor, form a contract between the bank and depositor, binding both."

We conclude, accordingly, that the Probate Court was in error in holding that "a valid joint and survivorship ownership to both savings accounts was created by the decedent and this plaintiff-petitioner" in reversing the decision of the referee and entering judgment in favor of plaintiff on both counts of his petition, and hold that no joint and survivorship account had been created in either The Ohio Savings Association or the Second Federal Savings & Loan Association in the names of Bobby Dumetroff and Nicholas T. Daramus, and that, as a consequence, the plaintiff had no right of ownership to either savings account of such financial institutions.

The judgment is reversed as contrary to law and the cause is remanded to the Probate Court with instructions to enter judgment in accordance with the decision of the referee.

*Judgment reversed.*

SILBERT, C. J., and SKEEL, J., concur.