In re Estate of Svab: Beaver, Appellant, *v.* Redmond, Admr., Appellee.

[Cite as Beaver v. Redmond, 8 Ohio App. 2d 80.]

(No. 336—Decided October 11, 1966.)

*Mr. Robert Merkle* and *Mr. Verne L. Harris*, for appellant.
*Mr. S. L. Summers* and *Mr. Harry L. Griffith*, for appellee.

LYNCH, J. This is an appeal on questions of law on the question of whether three savings accounts in the Portage County National Bank were assets of the estate of Josephine Svab, deceased, or were joint and survivorship accounts with Mary Ann Beaver, daughter of deceased. Josephine Svab died May 30, 1964. The account numbers and amounts involved are as follows:

B 2-2719   $ 9,000.00 plus interest
B 2-2720   $ 9,075.00 plus interest
B 2-2834   $10,100.00 plus interest

The administrator of the estate listed the above-mentioned bank accounts as assets in the inventory of the estate, and Mary Ann Beaver filed exceptions to the inventory. The Probate Court upheld the administrator, and Mary Ann Beaver is appealing that decision.

The first two accounts, being numbers B 2-2719 and B 2-2720, were opened in the name of Josephine Svab alone on December 5, 1963. On December 23, 1963, there were filed with the bank joint and survivorship cards signed by both Josephine Svab and Mary Ann Beaver (Exceptor's Exhibits 3 and 7). However, the bank did not add the name of Mary Ann Beaver to the passbooks of these accounts.

The third account, being number B 2-2834, was opened on February 13, 1964, as a joint and survivorship account in the names of Josephine Svab and Mary Ann Beaver.

On the signature card of that account there appears a signature that can readily be read as Josephine Svab and above this signature is a partial or incomplete signature. The last name "Svab" can be made out, but the first name could not be ascertained on its face alone.

The original deposits on opening these accounts were the only notations in these accounts. There were no withdrawals or further deposits in these accounts. The evidence revealed that Josephine Svab did not personally appear at the bank for any of the transactions concerning these accounts, and that Mary Ann Beaver obtained the signature cards from the bank and returned the cards with the signature of Josephine Svab to the bank.

Mary Ann Beaver attempted to testify on her behalf, but upon objection from the administrator the Probate Court prevented her from testifying. See Section 2317.03, Revised Code. The administrator then attempted to call Mary Ann Beaver as a witness for cross-examination, but the Probate Court sustained the exceptor's objection and did not permit her to be subject to cross-examination, under authority of *Verbsky* v. *Burger,* 146 Ohio St. 235.

There was no evidence in this case of the intention of Josephine Svab in signing the joint and survivorship signature cards of the bank accounts except the signature cards themselves.

The administrator produced as a witness, Joseph Thall, a handwriting expert, who testified that the legible signature of ''Josephine Svab'' on the signature card of the joint and survivorship account number B 2-2834 was not that of Josephine Svab but was similar to writing identified as belonging to Mary Ann Beaver. Mr. Thall testified that the signatures of Josephine Svab on the joint and survivorship signature cards of accounts numbers B 2-2719 and B 2-2720 (Exceptor's Exhibits 3 and 7) were the actual signatures of Josephine Svab.

We have no problem in affirming the decision of the Probate Court in deciding that account No. B 2-2834 is an asset of the estate. There was no evidence to rebut Mr. Thall's testimony that the legible signature of Josephine Svab on the signature card of this account was not her signature, and there was no evidence to explain what the partial or incomplete signature was supposed to represent. There was evidence that established that the money deposited in account number B 2-2834 belonged to Josephine Svab.

Accounts numbers B 2-2719 and B 2-2720 present different and more difficult questions as to whether under the circum-

stances of this case joint and survivorship accounts were created by decedent. There is a statute on joint and survivorship accounts, namely, Section 1105.09, Revised Code, but the courts have held that this statute was enacted for the benefit of the bank, and not for the depositor. 7 Ohio Jurisprudence 2d 258, Banks, Section 123.

In Ohio, the creation of a joint and survivorship bank account is a contractual matter. *Fecteau* v. *Cleveland Trust Co.*, 171 Ohio St. 121, at 124. See 7 Ohio Jurisprudence 2d 254, Banks, 120.

The third paragraph of the syllabus of *Fecteau* v. *Cleveland Trust Co.*, 171 Ohio St. 121, is as follows:

"The fact that a bank account is carried in the names of two persons jointly with right of survivorship is not always conclusive as to the ownership of the account, and, where a controversy arises as to the ownership of such account, evidence is admissible in a proper case to show the true situation."

The court in its opinion in the above case on page 125 stated:

"The real intent of the parties is often a question of fact, and evidence may be admitted to show that intent, even where by signature card or in some other way a joint account has apparently been established. * * *"

In *In re Estate of Hatch*, 154 Ohio St. 149, at page 152, the court said:

"Obviously, the creation of a joint and survivorship bank account is a matter of intention to be ascertained from the conduct and actions of the persons concerned. * * *"

The Probate Court held that the bank in this case had not accepted accounts numbers B 2-2719 and B 2-2720 as joint and survivorship accounts, because it had not made any notation on the passbooks of these accounts as to any change from their original status as accounts in the sole name of Josephine Svab. The court cited as authority for its decision on this point the recent case of *Daramus* v. *Hategan*, 2 Ohio App. 2d 347, the syllabus of which is as follows:

"1. The theory of a joint and survivorship account in a financial institution is that the owner of the money on deposit contracts with the financial institution to give another person a present joint interest in the account equal to his own and equal

rights with himself to withdraw monies from the account and that upon the death of one the balance be payable to the survivor; and, unless such contractual arrangements are consummated for a joint and survivorship account, no contractual relationship exists with the institution to carry out the plan of survivorship.

"2. Where a depositor has a savings account in his individual name in a financial institution, signs a signature card with another person for a joint and survivorship account, but fails to return with his passbook and the signature card as instructed by the institution and in accordance with the rules and regulations of the institution, no contract for a joint and survivorship account has been entered into between the depositor and the financial institution and no right of survivorship exists in such other person upon the death of the depositor."

There is no evidence that the Portage County National Bank had a requirement that a notation had to be made in the passbook in order to create a joint and survivorship account. Apparently, this bank had no particular rule or procedure regarding such accounts. A bank official testified that the executed joint and survivorship signature cards made these accounts joint and survivorship accounts.

Apparently, this bank is treating joint and survivorship accounts as routine items of business with little or no concern as to whether executed joint and survivorship signature cards actually represent the intentions of the depositor who signed them. We consider this to be poor banking practice.

We feel that the circumstances of this case with particular reference to the fact that the joint and survivorship cards apparently were executed only in the presence of the beneficiary illustrate the desirability of requiring bank procedures which would provide some assurance that a depositor understood and intended what he was doing before a joint and survivorship account is created.

Joint and survivorship bank accounts have been referred to as "a poor man's will." 10 American Jurisprudence 2d 331, Banks, Section 369. In this case, they would have the effect of a testamentary disposition. Section 2107.03, Revised Code, requires that a will be signed in the presence of two disinterested witnesses.

In *In re Estate of Hutchison*, 120 Ohio St. 542, at page 547, the court said:

"* * * The purpose of requiring statutory formalities in the execution of a last will and testament is to protect estates from fraudulent claims of persons asserting gifts and grants to take effect after death. The statute of wills is in many essential respects similar in its purposes to the statute of frauds and perjuries. * * *"

We are unable to find any decided cases on the question of what is required of a bank to create a joint and survivorship account in the absence of any formal bank procedure to create such accounts. After careful consideration of many reported cases on this subject, we have decided that a bank is an essential party to a joint and survivorship contract and that a bank must affirmatively accept such contract before a joint and survivorship account is created. A bank's acceptance of a joint and survivorship contract must be indicated on its records in written form and can be made either in handwriting, typewriting or printed stamp by a bank official or bank employee under instructions from a bank official.

The bank's notation in the passbook that it is a joint and survivorship account is evidence that the bank accepted the account as a joint and survivorship contract. See *Daramus v. Hategan, supra.* We feel that this is good bank practice. Other evidence would be the bank's notation on its ledger card.

In this case, the only evidence of the bank's acceptance of these accounts as joint and survivorship contracts is the executed joint and survivorship signature cards. These executed joint and survivorship signature cards are bank records, and we feel that a bank could indicate on an executed joint and survivorship signature card its acceptance of it as a joint and survivorship contract by an appropriate notation thereon. The issue in this case is whether the bank made such a notation.

Examination of Exceptor's Exhibits 3 and 7 reveals that they are typical bank joint and survivorship signature cards that have been signed by Josephine Svab and Mary Ann Beaver. They contain their addresses and other information about them which we feel has no significance in this case.

These cards have joint and survivorship agreements printed on them which name the Portage County National Bank to

which these agreements apply. We hold that this fact is not such an affirmative act on the part of the bank as to indicate acceptance of these accounts as joint and survivorship accounts.

On the top of these signature cards, "Josephine Svab or Mary Ann Beaver" is apparently typewritten. On the bottom, under the heading "Date Opened," appears "Dec. 23, 1963," which was apparently imprinted by a stamp. On the bottom of the reverse side, under the heading "Opened by," appears someone's initials in handwriting.

There is no evidence of who placed the above notations on these signature cards. Therefore, we are confronted not only with the question of whether these notations, if placed by the bank, were sufficient to affirmatively indicate their acceptance by the bank as joint and survivorship accounts but also the question of who placed such notations on these signature cards. This is a factual determination. The Probate Court has held that the bank did not accept these accounts as joint and survivorship accounts. There is insufficient evidence to say that the decision is against the manifest weight of the evidence. Therefore, we affirm the Probate Court on this issue.

The remaining issue in this case concerns whether the signing of the joint and survivorship signature cards by Josephine Svab was accompanied by an intention to change these accounts to joint and survivorship accounts.

One of the issues on this point was the health condition of Josephine Svab when she signed the joint and survivorship cards. The issue concerned itself with the physical condition of Josephine Svab and the effect that this would have on her mental capacity to sign the joint and survivorship signature cards. Everybody agreed that she suffered from sugar diabetes and that she had been in the hospital in September 1963 because of this ailment. She wore glasses and her eyesight was failing. However, the evidence was conflicting as to the extent of her ability to see and read. The Probate Court made the following findings of fact on this issue:

"* * * For approximately a year previous to her death, Mrs. Svab was afflicted by the normal difficulties of advancing years. She was unable to get around except with great effort. Her eyesight was failing rapidly, and near the end of her life, her sight was almost totally impaired. During this period, her

daughter, Mary Ann Beaver, the Exceptor, in this matter, took over the management of her financial affairs. She took care of her banking making deposits and issuing checks for the payment of her household bills * * *.''

We hold that there is sufficient evidence to substantiate the above findings of fact.

The Probate Court also stated the following in its opinion:

''* * * As to the two signature cards evidencing the other two accounts (B 2-2719 and B 2-2720) the circumstances were such as to compel a consideration of other principles which are established as to survivorship accounts. The first of these is: If the party did sign the cards was she capable of doing so and qualified to make a legal contract. If this is questionable, and the court concludes that was a fact in this case, then the mere signing of the card is not sufficient. The signing must be done under circumstances that prove that the signing was accompanied by the intention of the party to change the nature of the account. * * *.''

After a review of the evidence, we conclude that there was no evidence to indicate that Josephine Svab lacked the legal capacity to enter into a contract at the time the joint and survivorship cards were signed. There was evidence to indicate that it is questionable that Josephine Svab would know that she was signing joint and survivorship cards unless someone else informed her as to what she was signing. The evidence indicated that the only witness to the execution of these joint and survivorship signature cards was Mary Ann Beaver, the beneficiary.

The joint and survivorship signature cards in this case are typical of those used by most banks. They are three inches by five inches and are designed for the bank's files. The joint and survorship agreement is printed on these signature cards, and, because of the length of this agreement, it is set out in fine print. There is nothing on the printed form in any readily readable type to indicate that it is a joint and survivorship contract. On top of both cards is typed ''Josephine Svab or Mary Ann Beaver,'' but there is no evidence whether this was typed on these cards before or after Josephine Svab signed them.

Thus, in this case the only information on a blank joint and survivorship signature card that reveals that it is a joint

and survivorship contract is contained in the joint and survivorship agreement that is printed in fine print which is not readily readable. A person with average eyesight could read it, but it would require greater concentration to do so than usual reading material. It would be difficult or impossible for a person with poor eyesight to read this printed joint and survivorship agreement, depending on the extent to which his eyesight was impaired.

It has been established that Josephine Svab depended on her daughter, Mary Ann Beaver, for assistance in her financial affairs because of advancing age and failing eyesight. Obviously, Josephine Svab had to depend on Mary Ann Beaver for assistance in accomplishing whatever intent she had in creating these bank accounts. Under these circumstances, we hold that Mary Ann Beaver was in a confidential relationship with her mother when these joint and survivorship signature cards were signed.

The first two paragraphs of the syllabus of *Peterson* v. *Mitchener*, 79 Ohio App. 125, are as follows:

"1. Equity looks with extreme jealousy on transactions between parties who stand in a confidential relationship.

"2. Between parties who live in a confidential relationship, a transfer of property will be set aside, unless the person who benefited can show that utmost good faith was exercised, and that the benefit was conferred with a full knowledge of all the circumstances."

See 24 Ohio Jurisprudence 2d 626, Fraud, Section 9; 23 American Jurisprudence 764, Fraud and Deceit, Section 14.

The first two paragraphs of the syllabus of *McAdams* v. *McAdams*, 80 Ohio St. 232, are as follows:

"In an action by the grantor in a deed, to reform the instrument upon the ground that grantee fraudulently concealed and misstated the contents of the deed to the grantor, when it appears that the grantee is a son of the grantor and an attorney at law, and that such grantee was entrusted with the drafting of the instrument upon his own suggestion, such facts raise a presumption of the existence of relations of trust and confidence between the parties and put upon the grantee the burden of showing that no undue advantage was taken of the grantor in the execution of the deed.

"But when it also clearly appears in such case that such

deed is in apparent accord with previous declarations of the grantor as to his intentions and his subsequent declarations as to what he had done, and that he could read and had ample opportunity before, at, and after, signing the deed to read the same, the presumption of undue advantage by reason of confidential relations is rebutted, and the burden rests upon the grantor to show by clear and convincing proof that the deed is fraudulent.''

37 Corpus Juris Secundum 401 and 402, Fraud, Section 95, states as follows:

''There is a presumption of fraud when a fiduciary, or one in a confidential relation with another, or one on whom a justifiable dependence has been placed, profits at the expense of the person who confides in him. In such case the burden of going forward with evidence shifts to the fiduciary, or the one in a confidential relation with another, or the person on whom a justifiable dependence has been placed, to show that his conduct was free of fraud. However, the burden of proving the existence of the fiduciary or confidential relation, or the justifiable dependency, is on the party asserting it.''

See 25 Ohio Jurisprudence 2d 52-53, Fraud and Deceit, Section 230; 24 American Jurisprudence 90, 91, Fraud and Deceit, Section 258.

The fourth paragraph of the N. Y. S. headnotes in *In re Creekmore's Estate*, 1 N. Y. 2d 284, 152 N. Y. S. 2d 449, is as follows:

''Party asserting survivorship under joint deposit slip signed by depositor had burden of establishing competency of depositor and genuineness of the document.''

The first paragraph of the N. Y. S. headnotes of *Application of Zenzen*, 6 A. D. 2d 970, 176 N. Y. S. 2d 853, is as follows:

''In action by administratrix of decedent who had set up joint savings bank account in her own name and that of her nephew, payable to survivor, to obtain direction that proceeds of account should go not to nephew, but to estate, nephew had burden of showing that creation of bank account was true act and deed of depositor, to establish that decedent understood nature of instrument she signed transferring account from her name to joint names and that decedent was competent to make decision to sign it.''

See 10 American Jurisprudence 2d 333, Banks, Section 370.

After a review of the cases, we conclude that, when a beneficiary of a joint and survivorship bank account has a confidential relationship with the depositor or the depositor depends on the beneficiary to accomplish his intent in the creation of the joint and survivorship account, a presumption of undue influence arises, and the burden of going forward with evidence shifts to the beneficiary to show that his conduct was free of undue influence or fraud.

Mary Ann Beaver was the beneficiary of these joint and survivorship accounts, which were executed under circumstances where the depositor, her mother, depended on the beneficiary to accomplish her intent and where it was possible for Mary Ann Beaver to take advantage of her mother.

We hold that these facts created a persumption of undue influence on the part of Mary Ann Beaver; and that Mary Ann Beaver had the burden to show that she did not take advantage of her mother in the signing of the joint and survivorship accounts.

Mary Ann Beaver did not submit any evidence to rebut this presumption of undue influence. Therefore, we hold that the evidence does not establish that accounts numbers B 2-2719 and B 2-720 were joint and survivorship accounts.

*Judgment affirmed.*

JOHNSON, P. J., and JONES, J., concurs.