WEBB *v.* WEBB, GDN., ET AL.

[Cite as Webb v. Webb, Gdn., 13 Ohio Misc. 1.]

(Nos. 608210, 608600, 606204—Decided November 15, 1967.)

Probate Court of Cuyahoga County.

*Mr. William D. Ginn* and *Messrs. Thompson, Hine & Flory,* for plaintiff.

*Mr. Ralph D. Kovanda, Mr. James H. Nacey* and *Messrs. Nacey, Bill & Dottore,* for defendants.

BARTUNEK, J.  This matter comes before the court for a determination of the ownership of certain funds which were previously in a joint and survivorship savings account in the names of George A. Webb and Hazel D. Webb, husband and wife, in a state-chartered building and loan association.

Three separate actions, all filed by G. W. Webb, son of the deceased creator of the account, known as: Exceptions to Guardian's Account, Case No. 606204; Exceptions to Administratrix' Account, Case No. 608600; and Petition for Declaratory Judgment, Case No. 608210; brought this issue to the attention of the court and were consolidated, by agreement of counsel, for trial before a referee.

It is from the decision of the referee, finding that the proceeds of the account belong to Hazel D. Webb, that the petitioner/exceptor, the now-deceased G. W. Webb's estate, appeals.

The evidence fairly discloses the following:

During the lifetime of his first wife, George A. Webb opened a savings account in his name only in the main office of the Broadview Savings & Loan Co. on January 10, 1947. Some time after her death, in May of 1953, George converted that account to a joint and survivorship account in the names of himself and his only son, G. W. Webb.

On September 30, 1958, George married Hazel D. Webb, and fifteen months thereafter, on February 2, 1960, George closed out the account with his son and immediately redeposited the entire amount of $55,078.24 in a new joint and survivorship account in the same institution with himself and his second wife, Hazel, as co-signators. The institution transferred the said account intact, without loss of interest, and assigned a new number to it.

For the next 40 days, only George withdrew funds from the account, always in the amount of $50.00, except for one withdrawal on February 22, 1960, in the amount of

$2,000.00, which was subsequently paid to his son, G. W. Webb, in exchange for a promissory note in that amount.

From March 29, 1960, to November 8, 1960, both George and Hazel separately withdrew sums varying from $50.00 to $330.44. From November 15, 1960, only Hazel withdrew funds in amounts less than $500.00 until January 24, 1961, when she withdrew the entire balance of $49,948.45 remaining in the account, and caused it to be transferred to a savings account in the same institution in her name only.

During the entire period the savings account was in the joint names of George and Hazel Webb, no funds were deposited, other than the initial deposit, by either George or Hazel. During this period, George made 16 withdrawals and Hazel made 19, including the final closing of the account.

On March 6, 1961, G. W. Webb, George's son, made application to be appointed guardian of his father. But on April 4, 1961, Hazel, relying upon the physician's letter, originally obtained by G. W. Webb, declaring George to be incompetent, was appointed guardian, and G. W. Webb's application was denied.

. Subsequently, on April 23, 1961, George A. Webb died without a will and with few assets other than whatever interest he may have owned, if any, in the joint and survivorship account which had been in the Broadview Savings & Loan Co. Upon proper application, on May 9, 1961, Hazel was granted letters of admininstration in George's estate.

. In filing her guardian's inventory, guardian's final account, and her inventory and appraisement in the deceased's estate, Hazel did not list any of the funds which had been in the joint and survivorship account in the Broadview Savings & Loan Co. as an asset of either the incompetent's or the deceased's estate.

It is to this failure to list funds from the savings account that the son's estate excepts and seeks a declaratory judgment of this court as to its claim that these funds, in spite of the transactions set forth above, were and always remained assets of George A. Webb and should have been so listed in the guardian's inventory and the administratrix' inventory.

4

Hazel claims she does not have to list the joint and survivorship account because full interest in these funds was given to her by gift by her husband, George, on February 2, 1960, and she exercised her rights to these funds before George was declared mentally incompetent by this court and before he died.

Son, G. W. Webb, contends that George was not competent on the February date when the joint and survivorship account was created and hence no interest in those funds ever vested in Hazel. And even if that contention was not capable of proof, G. W. Webb's estate says, certainly Hazel knew that George was incompetent on January 24, 1961, when she closed the account, and for that reason alone, it should be held that she had no right to convert these joint funds to her own use. Additionally, the estate continues, George never intended for Hazel to have any interest in these funds, but that the account was created for convenience only, and not with the intention to ever transfer any interest to Hazel.

Thusly, the questions at issue here are:

■ Was George A. Webb competent on February 2, 1960, when he created a joint survivorship savings account with his second wife, Hazel D. Webb?

■ Did George create, at that time, a present, vested, and continuing interest in Hazel in the funds that were the subject of the joint and survivorship savings account?

■ If Hazel did attain the status of co-owner of these funds, did the subsequent mental disability of George alter that status?

■ Was Hazel's act in terminating the joint and survivorship account prior to the death of George successful in vesting sole title in her or did it act to terminate the joint and survivorship contract so as to preclude her from any survivorship rights at a later time?

■ Should the funds comprising the joint and survivorship savings account in the names of George A. and Hazel D. Webb, from February 2, 1960, to January 24, 1961, or any part thereof, be considered to be assets of the incompetent's estate or the decedent's estate of George A. Webb?

None of the evidence presented seems to challenge the competency of George A. Webb on February 2, 1960, with

any real probity. Indeed, even after that date, witnesses stated that George transacted business, met socially with people, and acted in a normal manner during several months of 1960.

The official of the Broadview Savings & Loan Co., who opened the new joint and survivorship savings account for George and Hazel, recalled the occasion and convincingly stated that there was nothing unusual about George on February 2, 1960. She saw George and Hazel sign the signature card and caused the account to be created at George's request.

The only testimony that touches at all adversely upon the mental condition of George on February 2, 1960, is the testimony and the letter of Dr. John H. Budd, who had been George's physician since 1951. He stated that he found George suffering from mental deterioration on March 10, 1960, and that the deterioration was the result of arteriosclerosis, a progressive, degenerative, slowly developing disease, thereby implying that mental disability existed earlier. But upon cross-examination, Dr. Budd would not state any opinion as to mental disability being present prior to March 10, 1960.

Consequently, there is no evidence whatsoever indicating that George was incompetent on February 2, 1960, when he created the joint and survivorship savings account in the names of George A. Webb and Hazel D. Webb. Therefore, it must be determined that a valid joint and survivorship account was then established.

What then, are the rights of two co-signators to a joint and survivorship savings account in a building and loan institution?

There have been a great number of cases from Ohio and other jurisdictions cited by counsel. Some of them set forth conflicting views, but the law of Ohio seems to be clear in stating that upon compliance with the rules and regulations of the institution, a joint and survivorship account is created between the co-signators by contract and through that contract the creator gives to the other co-signator a present joint interest in the account equal to his own. (*In re Estate of Svab*, 11 Ohio St. 2d 182; *Rhorbacker* v. *Bldg. Assn. Co.*, 138 Ohio St. 273; *Sage* v. *Flueck*,

6

132 Ohio St. 377; *Daramus* v. *Hategan*, 2 Ohio App. 2d 347; *In re Estate of Voegeli*, 108 Ohio App. 371; *Gall* v. *Central Trust Co.*, 57 Ohio App. 168; and *In re Mayforth's Guardianship*, 1 Ohio Supp. 87.)

Therefore, George, the creator of these funds, upon the signing of the deposit agreement, created in Hazel a present joint interest in the account equal to his own on February 2, 1960.

But to what extent does that present, joint and equal interest really exist? It is certainly there, but it remains always subject to the realities of ownership, as it is stated in the 1960 decision, *Fecteau* v. *Cleveland Trust Co.*, 171 Ohio St. 121, which holds:

"The fact that a bank account is carried in the names of two persons jointly with the right of survivorship is not always conclusive as to the ownership of the account, and, where a controversy arises as to the ownership of such account, evidence is admissible in a proper case to show the true situation."

(See also *In re Estate of Svab, supra*; and *Union Properties, Inc.*, v. *Cleveland Trust Co.*, 152 Ohio St. 430.)

What is the "true situation" in this case? We know that George originated this account in his own name only, commencing in 1947. Later, after the death of his first wife, George used his funds to create a joint and survivorship account with his son, G. W. Webb. This occurred in 1953.

From that time on, various deposits and withdrawals were made by George A. Webb until February 2, 1960, when the $23,000 balance at the time G. W. Webb's name was added to the account had grown to more than $55,000. At that time George A. Webb, then merely the co-owner of this joint and survivorship savings account, subject to the present, joint and equal rights of the other owner, withdrew the entire balance of the account and established a new one in the names of himself and his wife, Hazel, without a murmur of protest from G. W. Webb, the record co-owner of the account.

What did that demonstrate as to the "true situation" at least as it existed on February 2, 1960? It conclusively showed that George was the real owner of the funds and

that G. W. Webb, the other "co-owner" had really only a right to make claim to the funds, should George die, and only a right to withdraw any of the funds while George was living, *should George agree.*

And this "true situation" continued to exist and was impressed upon the new joint and survivorship account established in the names of George and Hazel Webb. George continued to be the real owner of the funds and Hazel, the other "co-owner," acquired only a right to make claim to the funds should George die, and only a right to withdraw any of the funds while George was living, should George agree.

The joint and survivorship account in Ohio, under these circumstances then, is based upon a contract, as most authorities agree, but that contract is a continuing one, entirely dependent upon the whims of the creator and subject to divestiture of the rights of the second party at any time. The only time the second party to the joint survivorship account contract can convert the funds to his own use without the consent of the creator of the account is after the creator's death. And even that is subject to dispute.

In terms of the instant case, then, once George, the creator of this account, the "true" owner of all the funds, became incompetent, the second party, his wife, Hazel, no longer had the authority in law to withdraw any of the funds for her own purposes prior to George's death. This is the law in other states and this is the law in Ohio. (See *Steinmetz* v. *Steinmetz*, 130 N. J. Eq. 176; *Stout* v. *Sutphen*, 132 N. J. Eq. 583; and *In re Griffith*, 33 Del. Ch. 387.)

Hazel contends, however, that this is not the law, and that since a present equal interest was given to her at the time of creation of the account, she was entitled to at least one-half of the funds on January 24, 1961, if George was indeed incompetent on that date, and maintains that she was entitled to all the funds because of the provisions of the joint and survivorship savings account contract, they both signed, found on the signature card which specifically states:

"We the undersigned owners of joint Savings Account No. 72311 in the Broadview Savings & Loan Com-

8

pany do hereby agree and jointly authorize and order the said company to pay any and all of the credits now or hereafter on said account on the order of any one or more of us both before, after and not withstanding the death or other incapacity of any one or more of us. And such payment shall be valid acquittance of said Company as against anyone at any time concerned. * * *''

This argument cannot be sustained, however, because it is well settled in Ohio that the form of the joint and survivorship savings account is not conclusive as to ownership, but is effective only for the protection of the institution. (*In re Estate of Svab, supra; Union Properties, Inc.,* v. *Cleveland Trust Co., supra; Fecteau* v. *Cleveland Trust Co., supra; National City Bank of Cleveland* v. *Hewes,* 90 Ohio Law Abs. 372; *In re Estate of Moore,* 90 Ohio Law Abs. 170; and *In re Morgan,* 40 C. D. 101, 28 C C. [N. S.] 222.)

It is quite evident that the funds were the sole property of the deceased since the very inception of the account and that Hazel contributed no funds to the account whatsoever. Therefore she could not claim title to the entire amount by virtue of this ''contract.''

But even if she did not contribute anything to the account, she contends, the law of Ohio gave her the right to at least one-half of the proceeds from the very beginning and that right to those proceeds continued and existed on January 24, 1961, even if George was incompetent on that date.

This contention may have been sound if George had been competent on the date of Hazel's withdrawal, but we cannot see its validity under the circumstances herein.

Testimony, even from Hazel's own witnesses clearly indicated that George was feeling the effects of his mental disability around Thanksgiving of 1960. And indeed he ceased making his customary $50.00 withdrawals shortly before that time.

Dr. Budd's letter dated March 3, 1961, following the examination of George on January 16, 1961, at which time Hazel recounted George's symptoms to him, clearly indicates that Hazel knew on January 24, 1961, that George

was incompetent and therefore her actions in closing the account were actions to terminate George's interest therein to her own benefit.

If Hazel had waited until the April 4, 1961, adjudication of incompetency, it would seem that she would have been entitled to one-half of the funds, as set forth in *Abrams* v. *Nickel*, 50 Ohio App. 500, a 1935 case which held:

"The adjudication of lunacy and appointment of a guardian of one of two parties to a joint and survivorship account terminates the agreement, and as each had a complete interest in the entire account, equity requires, in the absence of extraordinary circumstances, an equal division of the account between the parties involved as of the time the guardian was appointed."

So therefore, since she knew that George was incompetent on the date she withdrew the entire balance of the account, the most she would be entitled to is one-half of those proceeds.

But, the *Svab case,* previously cited will not even permit the equal division suggested above, because it urges us to look into the real situation to determine the true ownership of the entire account. And, after examining this aspect of the case, we are, under the compulsion of the *Svab case,* impelled to determine that, on January 24, 1961, all the funds in the joint and survivorship savings account in the names of George A. and Hazel D. Webb belonged entirely to George A. Webb, and Hazel was without legal authority to convert them to her own use.

The fact that George died four months later need not concern us here because the joint survivorship character of the account was destroyed upon the termination of the account by Hazel.

Hazel's counsel made much of the fact that most of the cases concerning joint and survivorship accounts deal with banks rather than building and loan associations such as is the institution involved herein. But, we cannot agree with the premise that a joint and survivorship savings account would have one meaning in a bank and another in a building and loan association.

The evidence clearly showed that the funds came sole-

ly from George A. Webb. His intentions to keep control of the funds can clearly be inferred from his activities while he remained competent.

At the beginning he withdrew the sums of $50 at regular intervals. As his mental illness progressed, sometimes he withdrew funds and sometimes Hazel withdrew funds. And as he became more severely incapacitated, only Hazel withdrew funds.

Although there has been no showing that these funds withdrawn by Hazel were solely for the benefit of George, we think that it can be fairly inferred that they were, except of course for the final closing of the account where Hazel clearly converted these funds to her exclusive control. And such act forms the basis for this decision.

The only way that Hazel could possibly be entitled to any of these funds would be to show a gift, as she does allege, but the confidential relationship she had with her husband during his declining months requires her to show such a gift by advancing the proof thereof, which she has utterly failed to do. There has been no evidence in this case of anything but an account established for the convenience of the creator of that account, George A. Webb.

Therefore, all of the funds in the Broadview Savings & Loan Co. in the names of George A. Webb and Hazel D. Webb belonged to George A. Webb and should have been included in the guardian's accountings as well as the inventory of the estate.

In respect to exceptions filed by the estate of G. W. Webb concerning the omission from the accountings of various insurance policies, no evidence has been forthcoming to sustain that contention and the said exceptions to this end are disallowed.

Unfortunately, even if clarified by a higher authority, the decision in this case will do little to end the confusion that has clouded the courts' minds in the problem of joint and survivorship accounts that has existed ever since 1926 when the Supreme Court first held in the *Cleveland Trust Co.* v. *Scobie*, 114 Ohio St. 241, that Ohio follows the contract theory in the establishment of these accounts wherein the court cited gift theory cases to substantiate its contract hypothesis.

Subsequent decisions have more and more adopted the contract theory while at the same time entirely disregarding the writing between the "co-owners" as having no validity, except to protect the institution holding the account. And this situation has encouraged the use of parol evidence to show the "real ownership" of the funds, regardless of the form of the account, the contract on the signature card, or the inability of either of the "co-owners" to testify as to the intention of the creator of the account.

The ultimate result of these decisions has been to literally extinguish both the joint and the survivorship character of the joint and survivorship account. (See *In re Estate of Svab, supra; Fecteau v. Cleveland Trust Co., supra;* and *Union Properties, Inc., v. Cleveland Trust Co., supra.*)

This is a situation which should not be allowed to exist. But it is a situation which cannot be cured by the courts.

In summary then:

1. George A. Webb was mentally competent on February 2, 1960, when he created a joint and survivorship savings account in the Broadview Savings & Loan Co. in the names of George A. Webb and Hazel D. Webb.

2. Funds withdrawn by either party to the account prior to January 24, 1961, were used for the benefit of George A. Webb and need not be accounted for either in the guardian's inventory or the administratrix' inventory.

3. On January 24, 1961, knowing George A. Webb was mentally incompetent, Hazel D. Webb did not have the legal authority to withdraw all of the funds from the account and under these circumstances, on that date these funds were assets of George A. Webb which should have properly been included in the guardian's inventory and the administratrix' inventory.

4. Hazel D. Webb's act in terminating the joint and survivorship account, while knowing of the incompetency of the creator of the account, precludes her from enjoying any survivorship rights she might have had in said account.

5. Proceeds of insurance policies, if any were received by Hazel D. Webb, need not be included in the guardian's inventory or the administratrix' inventory.

The referee's finding, insofar as it conforms to this decision is affirmed, and insofar as it conflicts with this decision is reversed.

Hazel D. Webb, being the guardian and the administratrix, is hereby ordered to file amended inventories and accounts in accord with the decision of this court.

*Judgment accordingly.*