Amos F. McCabe, Plaintiff in Error, v. Louis S. Williams, Trading as Louis S. Williams Milling Company, Defendant in Error.

(*September* 25, 1944.)

HARRINGTON, Chancellor, LAYTON, C. J., RICHARDS, RODNEY and SPEAKMAN, J. J., sitting.

*Howard W. Bramhall* and *Daniel J. Layton, Jr.*, for Plaintiff in Error.

*James M. Tunnell, Jr.*, for Defendant in Error.

Supreme Court, No. 2, February Session, 1944.

RODNEY, J., delivering the opinion of the Court:

This is a suit purporting to be brought against McCabe as an undisclosed principal by one who dealt with Knox, thought to be the principal, but who, it is contended, was the agent of the undisclosed principal.

The matter is complicated by some unusual features which must receive brief attention. Both McCabe and Knox denied that any relationship of principal and agent existed, and both contended that the chickens in controversy were the property of Knox and not of McCabe. Walston testified, however, that both Knox and McCabe had, in a conversation and at a time subsequent to the furnishing of the feed by the plaintiff, admitted that the ownership of the chickens was in McCabe. If the case had been, in other respects, submissible to the jury this question of ownership would have been a question of fact for the jury. The case was submitted to the jury, which found a verdict for the plaintiff. For the purposes of the case, then, we may assume that McCabe was the owner of the chickens, which were left in the custody of Knox to be raised. From the undisputed testimony it appeared that McCabe was to furnish the feed and other supplies for the chickens. Of course if the chickens did, in fact, belong to Knox, then there would have been no agency and there could be no personal liability on McCabe in the present case. The present question is—assuming that the ownership of the chickens was in McCabe, can he, McCabe, be held liable under the facts of the case for the contracts entered into by a third party with Knox?

That an undisclosed principal may under certain circumstances be liable for the contracts of his agent entered into with a third party in the conduct of the agency, may, for the purposes of the argument, be assumed. The basis of the liability and the limitations surrounding it are the subjects of much confusion. In particular much confusion

has resulted from the use of the terms "apparent authority" or "apparent ownership," as applied to the activities of the agent.

The two cases most relied upon as sustaining the liability of an undisclosed principal for the unauthorized contract of an agent are *Watteau v. Fenwick,* (1893), 1 *Q. B.* 346, and *Hubbard v. TenBrook,* (1889), 124 *Pa.* 291, 16 A. 817, 2 *L.R.A.* 823, 10 *Am. St. Rep.* 585. The exact bases upon which these decisions were founded are somewhat obscure. Aside from ratification a principal is only liable when the act of an agent is within the scope of his apparent or ostensible authority. The weight of authority excludes ratification by an undisclosed principal, since it only applies when an agent has assumed to act for a principal. *Keighley, Maxstead & Co. v. Durant,* [1901] *App. Cas.* 240, 1 *Br. Rul. Cas.* 351; *Schlessinger v. Forest Products Co.,* 78 *N.J.L.* 637, 76 A. 1024, 30 *L.R.A.,* (*N. S.*) 347, 138 *Am. St. Rep.* 627; *Brown Realty Co. v. Myers,* 89 *N.J.L.* 247, 98 A. 310.

Without ratification, then, the liability is not so much based on agency as it is on the estoppel which grows out of the fact that the principal has made some representation upon which the third person has relied. Where the principal is undisclosed and the third party was ignorant of his existence, the doctrine of estoppel must lose much of its theoretical existence. *Watteau v. Fenwick, supra,* does not seem to be based upon estoppel at all, but upon the implied authority of the agent. The act of the agent, however, was expressly forbidden, and it is difficult to imply authority to do an expressly forbidden act.

The doctrine of *Watteau v. Fenwick* has been followed, distinguished and criticized. It was expressly followed in *Kinahan & Co. v. Parry,* (1910), 2 *K. B.* 389; *Brooks v. Shaw;* 197 *Mass.* 376, 84 *N.E.* 110, and other cases. It was distinguished in *Becherer v. Archer,* 23 *Ont. App.* 202, in

which case, indeed, one judge thought it well decided but distinguishable, while another said "it has been sharply criticized and, it would seem, not without reason."

See, also, 37 *Sol. J.* 280; 10 *Col. L. Rev.* 763 and 9 *L. Q. R.* 111; 4 *Marquette L. Rev.* 6.

In *Hubbard v. TenBrook, supra,* one Sides conducted a grocery business in his own name, but with the property of and as agent for the defendant. Sides had no authority to make purchases, but did make such purchases from the plaintiff, on credit, the plaintiff believing Sides to be the actual owner of the business. The Court said [124 *Pa.* 291, 16 A. 818]: "this case falls within the equally established rule that those clothing an agent with apparent authority are, as to [those] dealing on the faith of such authority, conclusively estopped from denying it." On the other hand many legal treatises, including the comment on Sec. 194 of Restatement of Law of Agency, say "since apparent authority is the power which results from acts which appear to the third party to be authorized by the principal, if such person does not know of the existence of a principal there can be no apparent authority. Hence the liability of the principal is not derived from the exercise of apparent authority of the agent." The same Restatement after excluding liability based upon apparent authority says "there may be however an apparent ownership and from this there may be a power to affect the interests of the principal aside from any rule of agency." If the only misrepresentation of the undisclosed principal is as to the agent's ownership of the chattel, then it would seem that the extent of any estoppel would be the estoppel to deny that which had been misrepresented, viz. the ownership, so that any judgment against the agent could be levied against the property. The liability of the principal on the contract itself, as distinguished from assets or benefits, must rest upon agency itself.

It must be borne in mind that there is no more warrant for holding an undisclosed principal liable for acts which he did not authorize than there is for holding a ·disclosed principal in such cases. There may be less warrant for so doing, but there cannot be more. Mechem, "The Liability of an undisclosed Principal", 23 *Harv. L. Rev.* 598.

If a disclosed principal, aside from ratification, is only liable for a contract entered into by his authority, express or implied, so must an undisclosed principal, and an undisclosed principal has been held not liable where the agent was given no authority to act as principal, and it was not shown that the principal had allowed him to do so, or had reason to suppose that the agent was acting outside of his authority. 1 *Clark & Skyles on Agency, Sec.* 457; *Murphy v. Barnard,* 162 *Mass.* 72, 38 *N. E.* 29, 44 *Am. St. Rep.* 340.

Without exploring further into the general field of the liability of an undisclosed principal for the contracts of the agent, the present matter must be considered in connection with its own particular facts.

Here McCabe (assuming he was the owner of the chickens) placed them in the custody and possession of Knox for the purpose of having them raised, he, McCabe, agreeing to supply all necessary feed· and other supplies necessary for the purpose. Knox was not the manager of a general business being conducted in Knox' name, for no business other than the raising of these particular chickens was at all contemplated. The sole duty that Knox was to perform was to care for the chickens, using the feed supplied by McCabe. The feed supplied by the plaintiff on the order of Knox was the only unusual circumstance occurring in connection with the chickens, and it was not authorized by McCabe, or known by him until after the chickens were

sold. No inability or refusal on the part of McCabe to furnish the proper food is suggested in the record.

No overt act of McCabe's has been shown by which he can be construed to have rendered himself liable for the unauthorized acts of Knox, nor does it appear that there was any failure on the part of McCabe to exercise those reasonable precautions which in other branches of the law might be deemed to constitute a negligent course of conduct.

The case seems to fall directly within the terms of Sec. 200 of Restatement of the Law of Agency, as follows:

"An undisclosed principal who entrusts an agent with a chattel * * * but does not authorize him to transfer or otherwise affect the principal's interests therein, is not affected by a transaction between the agent and a third person".

This statement is in accord with the almost uniform current of the law that mere possession of an agent, of and by itself, unaccompanied with any indicia of ownership or other strengthening circumstances, is not sufficient evidence of title in the agent to affect the rights of the owner. For general collection of the authorities see 2 *Mechem on Agency* (2nd Ed.), *Sec.* 2110; 6 *Am. Jur.* 239; 19 *Am. Jur.* 696; *Davis vs. First Nat. Bank of Wewoka,* 6 *Ind. Ter.* 124, 89 *S. W.* 1015, 25 *L. R. A.,* (*N. S.*) 770.

Some stress has been laid in this case upon the testimony that much of the feed furnished by the plaintiff was used for the chickens, the purchase price of which has been received by McCabe. A portion of the feed was used for chickens with which McCabe had no interest. From these facts it is contended that by "ratification" or "acceptance of benefits" McCabe should be liable for the feed furnished by the plaintiff. We have shown that the principle of ratification can have little application in the case of an

undisclosed principal. The testimony is clear and undisputed that McCabe neither ordered the feed furnished by the plaintiff, nor knew that it had been furnished until the chickens were sold. Many authorities sustain the view that a principal does not ratify the unauthorized act of his agent by accepting the fruits thereof, if knowledge of such act did not come to him in time to repudiate the entire transaction without essential injury. *Clark v. Clark,* 59 *Mo. App.* 532; *Craver v. House,* 138 *Mo. App.* 251, 120 *S. W.* 686; *Winkleback v. National Exchange Bank,* 155 *Mo. App.* 1, 136 *S. W.* 712, 716; *Oxford Lake Line v. First Nat. Bk. of Pensacola,* 40 *Fla.* 349, 24 *So.* 480, 483; *Pacific Bone, C. & F. Co. v. Bleakmore,* 81 *Cal. App.* 659, 254 P. 618.

 The learned Judge in the Court below charged the jury that if it

"Should conclude that the defendant set up Knox as his agent to conduct this business in Knox' name, giving to the public knowledge of apparent ownership in Knox and if you further find that the plaintiff sold and delivered the items herein to Knox as owner and later discovered the defendant to be the real owner, that is, McCabe, and that Mc-Cabe the defendant received the benefits of these items, the defendant would be liable for the items so sold and delivered".

It would not be proper for us to consider this charge as if the appropriate facts had been shown in the case upon which it could have been based. It assumes the setting up of the agent as the manager of a general business in the agent's name, with the implied authority inherent in the managerial position, and then determines the consequent liability of such undisclosed principal. As to this, we express no opinion. We find no facts in the record which would sustain the charge. To us a careful review of the entire record (assuming McCabe was the owner of the chickens) shows a simple

bailment whereby McCabe placed the chickens in Knox' possession for the mere purpose of having them cared for until they arrived at the age when they should be sold. McCabe was to furnish all the feed and other necessary supplies, and no authority, express or implied, was given to Knox to make any purchases in connection with the chickens, nor was any knowledge of any purchases brought home to McCabe.

Because we find no facts which would authorize a judgment in favor of the plaintiff, we think it was error to refuse the prayer for binding instructions made by the defendant, and judgment must be reversed with instructions to enter a judgment in favor of the defendant.