

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-1994

# IRS v. Gaster

Precedential or Non-Precedential:

Docket 94-7195

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"IRS v. Gaster" (1994). *1994 Decisions.* Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 94-7195 and 94-7196

_____


INTERNAL REVENUE SERVICE

v.

DONALD GASTER and MARY ANN GASTER

v.

NINTH WARD SAVINGS BANK, FSB*

Third-party Defendant

Mary Ann Gaster**, Appellant in Nos. 94-7195 and 94-7196

* (Amended as per the Clerk's 6/8/94 Order)

** (Amended as per the Clerk's 9/9/94 Order)

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. 91-cv-00062)

_____

Argued September 19, 1994

Before: BECKER and COWEN, Circuit Judges and
POLLAK, District Judge.***


(Filed December 5, 1994)


_____

***. Honorable Louis H. Pollak, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

LORETTA C. ARGETT
Assistant Attorney General

GREGORY M. SLEET
Attorney

United States

GARY R. ALLEN
WILLIAM S. ESTABROOK
ALICE L. RONK
Tax Division
Department of

(Argued)

Post Office Box 502
Washington, DC 20044

Justice

Attorneys for IRS

PETER A. MARDINLY

(Argued)

Paul, Mardinly,
Flandreau &

Durham, James, Rodger

320 West Front

Street, Box D

Media, PA 19063

Attorney for

Appellants

Donald & Mary Ann Gaster

WILLIAM J. MARSDEN,

JR.(Argued)

Potter, Anderson &

Corroon

P.O. Box 951
350 Delaware Trust

Building

Wilmington, DE 19899

Attorney for

Appellee

Ninth Ward

Savings Bank, FSB

---

**OPINION OF THE COURT**

---

BECKER, <u>Circuit Judge</u>.

This appeal from a judgment of the District Court for the District of Delaware primarily presents the question whether the Internal Revenue Service ("IRS") had the right to levy pursuant to 26 U.S.C. § 6321 on a bank account at the Ninth Ward Savings Bank ("the Bank") in Wilmington, Delaware, owned jointly by appellants Donald Gaster and his wife Mary Ann Gaster, along with their son Bryan Gaster. The IRS levied against the account in order to enforce a judgment for a tax deficiency obtained against Donald Gaster in his individual capacity. Donald Gaster died during the pendency of this appeal, and his estate has challenged the propriety of the IRS levy. Alleging that the property which was levied upon was held by her and Donald Gaster (the "Gasters") as tenants by the entireties, Mary Ann Gaster claimed an interest in property seized for another's taxes under 26 U.S.C. § 7426. (Bryan Gaster has waived all interest in the bank account and is not a party.)

It is unquestioned that the IRS can properly levy on the account if Donald Gaster, the delinquent taxpayer, had the unilateral right to withdraw money from the joint bank account under Delaware law. The district court determined, following a bench trial, that Donald Gaster had a unilateral right to withdraw funds from the account and hence the IRS could properly levy on the

account.  We conclude, however, that the district court erred and that pursuant to the Gasters' contract with the Bank and applicable Delaware law, both the signature of Donald and Mary Ann Gaster were required in order to withdraw funds from the account.  We therefore hold the IRS levy to be improper and reverse the judgment of the district court with the direction to dissolve the levy.

## I.

On June 25, 1985, the Gasters opened an account at the Bank to deposit the proceeds from the sale of an apartment building in Secane, Pennsylvania, which they had held as tenants by the entireties.  When they opened the account, the Gasters transferred a portion of it to their son, titling in the alternative the account's original signature card and six-month certificate of deposit ("CD") -- "Donald Gaster or Mary Ann Gaster or Bryan Gaster."  It is undisputed that the titling of a signature card in the alternative allows for unilateral withdrawal from the account by each owner.  The district court found that the Gasters titled the signature card in the alternative -- which permitted access to the account with one signature -- because Donald Gaster would be unavailable due to the pendency of serious surgery.

On the following day, June 26, 1985, the Supreme Court decided United States v. National Bank of Commerce, 472 U.S. 713, 105 S. Ct. 2919 (1985), holding that the determination whether a delinquent taxpayer has an interest in a joint bank account subject to a federal tax lien turns on whether the delinquent has a unilateral right under the applicable state law to withdraw funds

from the account.  Shortly after the publication of the National Bank of Commerce opinion, the Gasters became aware of its holding and resolved to protect their jointly-held property from an IRS levy that could arise from an IRS judgment obtained against Donald Gaster on May 12, 1977.  To effectuate this intent, Donald Gaster went to the Bank in December 1985, and retitled the signature card to read "Donald Gaster and Mary Ann Gaster or Bryan Gaster," so that more than one signature would be required in order for Donald Gaster to withdraw funds from the jointly owned account.  Over the next five years (until and including the time of the IRS levy on August 24, 1990) all correspondence from the Bank with regard to the account referred to the account in this conjunctive form.

From the time the account had been established, the Bank sent a savings transfer form to the Gasters every six-months to authorize the roll-over of the proceeds from an expiring CD for the purchase of a new CD.  Even after the change in the signature card, Mary Gaster would return the form, with her signature alone, on behalf of both herself and her husband.  With the return of each transfer form, the account's title remained conjunctive.  No withdrawals of any kind have ever been made from the account.

On August 24, 1990, the IRS levied on the account pursuant to 26 U.S.C. § 6321 to enforce the 1977 tax deficiency judgment against Donald Gaster.  In response to this levy, the Bank filed a complaint in interpleader against the Gasters and the IRS in the Delaware Superior Court.  The IRS removed the interpleader action to the District Court for the District of Delaware, 28 U.S.C. § 1444, invoking jurisdiction pursuant to 28 U.S.C. §§ 1340

and 1345 and also 26 U.S.C. §§ 7402 and 7403.  As we have noted, the district court held that the IRS could levy on the account, deciding that Donald Gaster had a unilateral right to withdraw the funds.  The court concluded in a memorandum opinion that Donald Gaster's subsequent modification of the account signature card was ineffective, given that Donald Gaster alone formally executed the change.  This appeal followed.

While we review the district court's findings of fact under a clearly erroneous standard, Sheet Metal Workers Int'l Ass'n Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991), the court's conclusion that Donald Gaster had an unrestricted unilateral right to withdraw the funds under Delaware law is a legal question over which we exercise plenary review.  Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992); High v. Balun, 943 F.2d 323, 325 (3d Cir. 1991).

## II.

### A.

Section 6321 of the Code, 26 U.S.C. § 6321, provides: "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

In National Bank of Commerce, the Supreme Court addressed the question of when a delinquent taxpayer's interest in a joint bank account constitutes "property" or "rights to property"

pursuant to § 6321. The Court concluded that a delinquent taxpayer has such an interest in property on which the IRS may levy when "under state law, a taxpayer has the unrestricted right to withdraw funds from the account." National Bank of Commerce, 472 U.S. at 725-726, 105 S.Ct. at 2927. Whether the delinquent has such a right to the funds is governed by state law, since "state law controls in determining the nature of the legal interest which the taxpayer had in the property." Id. at 722, 105 S.Ct. at 2925 (internal quotation omitted) ("This follows from the fact that the federal statute creates no property rights but merely attaches consequences, federally defined, to rights created under state law." (internal quotation omitted)). Thus, in deciding whether the IRS may properly levy on the jointly-owned account at the Bank, we must determine whether the tax delinquent, Donald Gaster, had an unrestricted right to the funds in the account under Delaware law.

Pursuant to National Bank of Commerce, before considering Mary Ann Gaster's cross-claim for the return of her ownership interest in the proceeds of the bank account under 26 U.S.C. § 7426, we are required to determine the propriety of the IRS levy.[1] National Bank of Commerce, 472 U.S. at 728, 105 S.Ct. at 2928 ("[A]

---

[1] The district court found that Mary Ann Gaster's § 7426 claim to one-half of the funds, in the alternative, as a tenant in common (as opposed to as a tenant by the entireties) was time barred in that the claim was not made within nine months of the date of the levy as required by 26 U.S.C. § 6532(c). On appeal, looking to the pre-trial conduct and communication, the IRS has conceded that Mary Ann Gaster did in fact assert her § 7426 claim within nine months of the levy. Given that we find the IRS levy was improper, we never reach the validity of Mary Ann Gaster's § 7426 claim to one-half of the account as a tenant in common.

levy action settles no rights in the property subject to seizure." (internal quotation omitted)). If the IRS levy is determined to be proper, "one claiming an interest in property seized for another's taxes may bring a civil action [under § 7426] against the United States to have the property or the proceeds of its sale returned." Id. Alternatively, § 6343(b) provides an administrative proceeding to allow a claimant a remedy for the return of seized property. Treas. Reg. § 301.6343-1(b)(2), 26 C.F.R. § 301.6343-1(b)(2) (1984). It is only under these post-seizure proceedings that the ownership form of the property becomes relevant.

In sum, as the Court made clear in National Bank of Commerce, the propriety of the IRS levy turns only on right to withdraw, not the ownership form of the bank account. The ownership form determines only the claimant's share of the seized property under her post-seizure claim. National Bank of Commerce, 472 U.S. at 728 n.11, 105 S.Ct. at 2928 n.11. Thus, whether or not Donald and Mary Ann Gaster owned their share of the account as tenants by the entireties is relevant only if we first determine that the IRS levy was proper.

Before proceeding to that determination, it is important to note that in National Bank of Commerce the Supreme Court acknowledged that if money is held by a husband and wife in a joint bank account as tenants by the entireties[2] under applicable state

---

[2] A tenancy by the entireties "is created between a husband and wife and by which together they hold title to the whole with right of survivorship so that, upon death of either, [the] other takes [the] whole. . . . Neither party can alienate or encumber the property without the consent of the other." **Black's Law Dictionary** 1022 (6th ed. 1990).

law "the Government could not use the money in the account to satisfy the tax obligations of one spouse," notwithstanding the propriety of the levy. National Bank of Commerce, 472 U.S. at 729 n.11, 105 S.Ct. at 2928 n.11 (citing Raffaele v. Granger, 196 F.2d 620, 622 (1952), which recognizes that if an account is held as tenants by the entireties under Pennsylvania law the IRS's "attempt to deal separately with or dispose of the interest of one is in derogation of the other spouse's ownership of the entire property and, therefore, legally ineffective"). Similarly under Delaware law, the IRS would not be entitled to the money in the account if the Gasters owned the account as tenants by the entireties since both Donald and Mary Ann Gaster would be "seized, not merely of equal interests, but of the whole estate during their lives and the interest of neither of them can be sold, attached or liened except by the joint act of both husband and wife." Steigler v. Insurance Co. of North America, 384 A.2d 398, 400 (Del. 1978) (citation omitted).

Consequently, if a tenancy by the entireties existed, Mary Ann Gaster could successfully recover the entire amount in the account pursuant to her § 7426 (property claim) action. However, while it appears that the Gasters owned their share of the account[3]

---

[3] The question of the ownership form of Donald and Mary Ann Gaster's share of the account is not affected by the fact that the account was owned along with their son Bryan. "In jurisdictions where tenancies by the entirety have not been abolished, a tenancy by the entirety may be created [between] three or more persons, two of whom are husband and wife--e.g., by a transfer to H (husband) and W (wife), and X, in which case H and W take an undivided one-half interest as tenants by the entirety, and X takes a one-half undivided interest as tenant in

from its establishment in June of 1985 as tenants by the entireties under Delaware law,[4] as we have stated, we need not address this issue if we first determine that the IRS levy was improper.

---

common vis-a-vis H and W."  Robert A. Cunningham et al., **The Law of Property** 204 (2d ed. 1993).

[4]  The district court made a factual finding that, when the account was initially established, the Gasters desired that only one signature be required to access the account because of Donald Gaster's poor health.  From that fact, the court concluded that the account was established as a tenancy in common.  In light of its finding that the change in signature card was legally ineffective, see discussion infra, the court also held that the account remained a tenancy in common even after Donald Gaster changed the signature card to the conjunctive.  While we need not, given our holding, address the question of the ownership form of the account, it does appear that under Delaware law Donald and Mary Ann Gaster's share of the account was initially established as a tenancy by the entireties.  That is because in addition to the presumption, recognized by the district court, in favor of a tenancy by the entireties when a joint bank account is opened by a husband and wife in the conjunctive form, Widder v. Leeds, 317 A.2d 32, 34 (Del. Ch. 1974), a more general presumption exists in favor of a tenancy by the entireties under Delaware law.  Property held by husband and wife in "Delaware and the majority of other jurisdictions as well" is "presumptively held by the entireties."  See William M. Young v. Tri-Mar Asso. Co., 362 A.2d 214, 215 (Del. Super. Ct. 1976).  The fact that the Gasters originally established the account in the alternative to allow for unilateral withdrawal would not negate a finding that the account was held as tenants by the entireties.  Under Delaware law a joint bank account, though in such form as to permit either husband or wife to draw, is a tenancy by the entireties, in the absence of evidence to the contrary.  Hoyle v. Hoyle, 66 A.2d 130, 132 (Del Ch. 1949); see also In re Griffith, 93 A.2d 920, 922 (Del. Ch. 1953).  In addition, Delaware courts have discounted the significance of bank signature cards in determining the presence of a tenancy by the entireties.  See In re McCall, 398 A.2d 1210, 1215 (Del Ch. 1978) ("The purpose of such a card being not for the purpose of establishing ownership but only to guard against a payment to an unauthorized person.").
    Moreover, the district court acknowledged that the funds in the account at Ninth Ward Bank originated from the sale of the Secane apartment building, owned by the Gasters as tenants by the entireties.  In Delaware proceeds of property held by a husband and wife as tenants by the entireties will continue to be held as

**B.**

The propriety of the IRS levy depends on whether Donald Gaster possessed a unilateral right of withdrawal as determined "by his contract with the bank, as well as by the relevant [Delaware] statutory provisions."  National Bank of Commerce, 472 U.S. at 723, 105 S.Ct. at 2926.  If Donald Gaster had a unilateral right to withdraw funds from the account, the IRS levy was proper; if he did not have such a right, the IRS levy was improper.  It is not disputed that when the joint account at the Bank was initially established, Donald Gaster had a unilateral right to withdraw funds from the account, given the original alternative form of the account signature card.  The issue, however, is the ability of Donald Gaster to unilaterally withdraw funds at the time of the IRS levy, after his change in the signature card, the efficacy of which, as we explain infra, is clear.[5]

---

tenants by the entireties absent clear evidence of a contrary intent.  Moser v. Moser, 287 A.2d 398, 399 (Del. 1972); Widder, 317 A.2d at 35 ("[D]irect derivatives of entireties property prima facie remain entireties property, even if taken in the name of one spouse alone."); Tri-Mar, 362 A.2d at 216.  Given this strong presumption, it appears Mr. and Mrs. Gaster would continue to hold their share of the account as tenants by the entireties.

[5]  The district court concluded that Donald Gaster changed the signature card at the bank in light of the Court's opinion in National Bank of Commerce in order to avoid a possible IRS levy to collect an existing deficiency judgment.  Notwithstanding this factual finding, the district court did not consider and the IRS has not argued that Donald Gaster's change in the signature card, in order to deny the IRS the ability to levy on the account, constituted a fraudulent conveyance under Delaware law.  Arguably, such action could be viewed as a fraudulent conveyance under 6 Del. C. §§ 1304, 1307, in that Mr. Gaster altered the signature card in order to avoid collection on an existing IRS judgment.  While the case at bar presents a slightly different question, Delaware case law has found a fraudulent conveyance

The record provides uncontested testimony that Bank policy would have required the signature of both Donald and Mary Ann Gaster (or, alternatively, the single signature of Bryan Gaster) in order to make a withdrawal from the account, given the conjunctive signature card. The fact that Bryan Gaster could have unilaterally withdrawn the funds is not relevant to our analysis since under National Bank of Commerce we must determine whether the delinquent taxpayer had a right, acting alone, to withdraw funds from the account. National Bank of Commerce, 472 U.S. at 728, 105 S.Ct. at 2928.

The Bank has stated that it would have honored a withdrawal from this particular savings account by issuing a check payable as the account was titled -- "Donald Gaster and Mary Ann Gaster or Bryan Gaster." If such a check were issued, Delaware law would require the signature of both Donald and Mary Ann Gaster (or

---

when a spouse alters the ownership form of property to a tenancy by the entireties in order to avoid a judgment creditor. Harrington v. Hollingsworth, 1994 Del. Ch. LEXIS 101 (July 6, 1994); Givens v. Givens, 1986 WL 2270 (Del. Super. 1986).

We cannot decide whether Donald Gaster's conduct establishes a fraudulent conveyance under Delaware law, however, since the IRS's failure to raise the issue either in the district court or on appeal constitutes a waiver. See Brenner v. Local 514, United Brotherhood of Carpenters, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument."); International Raw Materials v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) ("We have repeatedly emphasized that failure to raise a theory as an issue on appeal constitutes a waiver because consideration of that theory would vitiate the requirement of the Federal Rules of Appellate Procedure and our own local rules that, absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations." (internal quotation omitted)), cert. denied, 113 S. Ct. 1588 (1993).

the sole signature of Bryan Gaster) in order to negotiate the check. Delaware has enacted the relevant portion of Article 3 of the Uniform Commercial Code which requires the signature of each payee when a check is issued in the conjunctive form.

> An instrument payable to the order of two or more persons: . . . (b) if <u>not in the alternative</u> is payable to all of them and may be negotiated, discharged or enforced only by <u>all</u> of them.

6 Del. C. § 3-116(b) (emphasis added). Therefore, as a matter of Delaware law, both the signatures of Donald and Mary Ann Gaster were required to withdraw funds from the savings account. Given that his wife's signature was also required, the delinquent taxpayer, Donald Gaster, did not have the ability to withdraw funds unilaterally from the account; correspondingly, the IRS levy was improper.

## C.

Notwithstanding the fact that representatives of the Bank testified that they would require the signatures of both Donald and Mary Ann Gaster to actually make a withdrawal from the account, the district court refused to recognize the legal effect of the change in the signature card since Mary Ann Gaster never executed a document evidencing her assent to the change. We disagree with the significance the district court placed on the failure of Mary Ann Gaster to formally demonstrate her consent.

We may conclude that Donald Gaster had the actual authority to act as an agent of his wife in this particular instance if he was acting consistent with a manifestation of consent by Mary Ann Gaster.  An agency relationship "'results from the manifestation of consent by one person to another that the other shall act on his behalf . . . .'"  Cox v. Deon, 1994 Del. Super. LEXIS 357, at *9 (July 29, 1994) (adopting the definition of **Restatement (Second) of Agency** § 1); see also Concors Supply Co. v. Giesecke, Int'l, Ltd., 1990 Del. Super. LEXIS 87, at *5 (March 5, 1990).  Consent sufficient to establish an agency relationship exists not only where there is prior authorization, but also where a principal ratifies acts done on her behalf after the fact. McCabe v. Williams, 45 A.2d 503, 505 (Del. 1944); Hirzel Funeral Homes, Inc. v. Equitable Trust Co., 83 A.2d 700, 701 (Del. Super. Ct. 1951); **Restatement (Second) of Agency** § 100 & cmt. a ("The affirmance of the act of an unauthorized person by the purported principal, all conditions for ratification being fulfilled, normally has the same effect as if such person had been originally authorized.").  Thus, the change in the signature card is legally binding if Mary Ann Gaster was aware of, and ratified, the change done, in part, on her behalf.

At trial, Mary Ann Gaster testified that even though she failed to explicitly authorize Donald Gaster's actions before the fact, she manifested a general consent to his acting on her behalf.

> Q: Mrs. Gaster, when did you become aware that the accounts at Ninth Ward Savings Bank and Loan had been changed from Donald or Mary Ann Gaster to Donald and Mary Ann Gaster?

A:  I guess after Donald did it.  Being married to a man for 40 years, I trust anything he does, I agree with.

Q:  He did not consult you before he did this?

A:  I don't feel he would have to -- I mean, what's his is mine, and what's mine is his.

In addition to her acknowledging her ratification of his actions at trial Mary Ann Gaster was aware of and failed to object to the change that her husband made in the signature card for a period of more than five years after the change in the card and before the time of the levy.  She signed on multiple occasions the saving transfer forms which reinvested the funds in an account where title was consistent with the change in the signature card -- "Donald and Mary Ann Gaster or Bryan Gaster."  Given these uncontested facts, including those that demonstrate Mary Ann Gaster's retroactive consent to the change in the signature card, we conclude that as a matter of Delaware law Mary Ann Gaster ratified the change.  See **Restatement (Second) of Agency** § 83 (1958) (allowing a principal to ratify an agent's unauthorized prior act if he knows about it and fails to take affirmative steps to disavow the act).

In sum, we conclude that the change in the card was legally effective, since when Donald Gaster executed the change in the signature card he was acting as the agent of his wife under Delaware law as to her share of the account.  Buttressing this conclusion is the fact that Delaware law, in general, considers a

husband and wife as agents of the other when dealing with a joint account.  See Hoyle v. Hoyle, 66 A.2d 130, 132 (Del. Ch. 1949).[6]

[6]  In Hoyle, the Delaware Chancery Court was presented with the question whether a husband and wife could own a joint bank account as tenants by the entireties notwithstanding the fact that both spouses had the unilateral right to withdraw funds from the account.  The court determined that a tenancy by the entirety could exist even with the unilateral right of withdrawal, since each spouse can be viewed as acting as the agent of the other with regard to a joint account.

> It should be noted that while the bank accounts here were in the names of the husband and wife, the money could be withdrawn by either the husband or the wife.  The fact that the money could be withdrawn by either spouse has been held in Pennsylvania not to defeat a finding of an estate by the entirety in such money because in such a situation each spouse is considered to be the agent of the other. This is deemed to satisfy the so-called "control" unity requirement of such an estate.  See Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624, 117 A.L.R. 904 [(1938)]; Berhalter v. Berhalter, 315 Pa. 225, 173 A. 172, 173 [(1934)]. I accept and adopt the reasoning and conclusion of the Pennsylvania Supreme Court in this respect.

Hoyle, 66 A.2d at 132 (emphasis added).  Subsequent Delaware cases have limited the finding of an agency relationship in the event that one spouse becomes incapacitated, In re Griffith, 93 A.2d at 922–23 ("The present case is distinguished from the Hoyle case in that . . . the other tenant by the entireties, had been adjudicated an insane person . . . . The fact that the husband's mental or physical condition was such that he was incapable of transacting business would not constitute the wife as general agent or vest her with a general or unlimited authority as to all his affairs."); Barrows v. Bowen, 1994 Del. Ch. LEXIS 63, at *7 ("This disinclination to assume agency or natural guardianship is designed to encourage formal judicial guardianship adjudications which protect the interests of possibly impaired person."). However, the Hoyle court's finding of an agency relationship, as between competent spouses in dealing with a joint bank account, has gone uncontested.

**D.**

In addition to concluding that the change in the signature card was ineffective, the district court also appeared to rely for its determination that Donald Gaster had unilateral access to the account on the fact that Mary Ann Gaster at times unilaterally executed saving transfers on the account. Because only Mary Ann Gaster signed the saving transfer forms, the government contends that Donald Gaster really had a unilateral right to withdraw funds from the account, the Gasters' interests in the account being identical. We disagree. A savings transfer is not a withdrawal, since no money leaves the bank. See **Black's Law Dictionary** 1104 (6th ed. 1990) (defining withdrawal as the "removal of money or securities from a bank or other place of deposit" (emphasis added)). The ability to remove funds from the bank is clearly the touchstone under National Bank of Commerce. See National Bank of Commerce, 472 U.S. at 723, 105 S. Ct. at 2926 (focusing on whether the delinquent "had the unqualified right to withdraw the full amounts on deposit in the joint accounts without notice to his co-depositors" (emphasis added)). At trial, Bank officials clarified this distinction, stating that while the conjunctive signature card required the signature of both Donald and Mary Ann Gaster in order for either to have made a withdrawal, two signatures were not required to make a savings transfer, since the signature card only governed withdrawals.[7]

---

[7] As the Restatement (Second) of Contracts § 223 makes clear, course of dealing plays a role in contract interpretation.

## III.

In sum, we conclude that pursuant to the Gasters'
contract with the Bank and applicable Delaware law, both the
signature of Donald and Mary Ann Gaster were required in order to
withdraw funds from the account.  Accordingly, we hold the IRS levy
to be improper and will therefore reverse the judgment of the
district court with the direction to dissolve the levy.  In
addition, we will vacate as moot the judgment in favor of the IRS
as to Mary Ann Gaster's § 7426 cross-claim, and will affirm the
district court's judgment as to the Gasters' claim against Ninth
Ward Savings Bank.[8]

Correspondingly, a different case might be presented if,
notwithstanding the conjunctive signature card and stated bank
policy, the Gasters had a practice of making unilateral
withdrawals which were honored by the Bank.  If such a scenario
were presented, we would need to examine whether the parties'
course of dealing overrode the apparent requirement, as embodied
in the conjunctive signature card, for the signature of both
Donald and Mary Ann Gaster in order for either to make a
withdrawal.  On the present record, however, no such analysis is
required since unilateral savings transfers do not constitute a
course of dealing inconsistent with the requirement that both
Donald and Mary Ann Gaster authorize a withdrawal from the
account.

[8]  The Gasters filed a counterclaim against the Bank alleging
that if Donald Gaster had unilateral access to the account, the
Bank was negligent and/or in breach of contract in complying with
the Gasters' instructions in retitling the signature card.  The
Gasters reason that, if the district court correctly concluded
that the unilateral change in the signature card was ineffective,
then the Bank neglected a duty to inform them of the appropriate
manner in which to properly alter the card.  The district court
summarily rejected this claim.  The Gasters have appealed the
district court's judgment in favor of the Bank.  Given our
determination that Donald Gaster effectively changed the

signature card so as to avoid the proper imposition of an IRS levy -- hence we need not address the Gasters' claim against the Bank, and we will affirm the district court's judgment in favor of the Bank.